**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  10-80062-CV-MARRA/JOHNSON**

SOUTH FLORIDA TEA PARTY, INC.,
A Florida non-profit corporation,
EVERETT WILKINSON,
An Individual,
FLORIDA TEA PARTY, LLC
A Florida non-profit corporation,
JUST PATRIOTS, INC.,
d/b/a UNITED AMERICAN
TEA PARTY,
A Florida non-profit corporation,
TIM MCCLELLAN,
An individual,
MARTIN 9/12 TEA PARTY COMMITTEE,
A group of concerned citizens,
NAPLES TEA PARTY,
A group of concerned citizens,
COLUMBIA SOUTH CAROLINA TEA PARTY,
A group of concerned citizens,
DEBBIE GUNNOE,
An individual,                                    **RESPONSE IN OPPOSITION TO**
NAVARRE PATRIOTS,                          **DEFENDANTS' MOTION TO DISMISS**
A group of concerned citizens,             **THE AMENDED COMPLANT**
CARL IKEN,
An individual,
TREASURE COAST TEA PARTY,
A group of concerned citizens,
JOHN STAHL,
An individual,
MAUREEN HOURIGAN,
An individual,
JACKSON TEA PARTY,
A group of concerned citizens,
GERRI IRVINE,
An individual,
TOBY MARIE WALKER,
An individual,
WACO TEA PARTY,
A group of concerned citizens,
DAVID VON GUTEN,
An individual,
NORTH LAKE TEA PARTY,

1

A group of concerned citizens,
SUZANNE S. SOLOMON,
An individual,
DON FORWARD,
An Individual,
TITUSVILLE PATRIOTS,
A group of concerned citizens,
BLANCA PERALES-SMITH,
An individual,
LEON HOWARD,
An Individual,
TRI-CITIES TEA PARTY,
A group of concerned citizens,
RON S. KOLSKY,
An individual,
MARY BETH ERDMANN,
An individual,
PORT HURON TEA PARTY,
A group of concerned citizens,
WILLIE LAWSON,
An individual,
EUGENE LACROSSE,
An Individual,
MARCEL G. VARRANDO III,
An individual,
MARY CLARK,
An individual,
TEA PARTY SOLUTIONS, INC.,
A group of concerned citizens,

       Plaintiffs,

vs.

TEA PARTY,
A registered Florida Political Party,
Legal entity unknown at this time,
FRED O'NEAL,
An Individual and Chairman of
Defendant Tea Party,
DOUG GUETZLOE,
An Individual,
NICHOLAS EGOROFF,
An individual,

       Defendants.
_____/

2

## RESPONSE IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs, by and through their undersigned counsel, hereby respond in opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint as follows:

The Defendants' repetitive Motion to Dismiss can be summed up in two simple (albeit incorrect) arguments: 1) the Defendants allege that no case or controversy exists, and 2) the Defendants allege that even if a case or controversy does exist, that the Plaintiffs have not met the liberal pleading standard required to allege such a case or controversy.  Neither of these arguments is legally sound.

For all of the Defendants' lengthy explanations, they fail to recognize the key issue, namely, that the Defendants, by and through attorney Fred O'Neal, Esq., made demands, citing Florida statutes, that directly and indirectly put the Plaintiffs in a state of uncertainty as to their rights and obligations, and placed them in fear of litigation.  Specifically, the Defendants demanded that many of:

- the Plaintiffs **"stop using 'Florida Tea Party' on your website"** citing to Florida Statute §865.09 as authority for the demand, (D.E. 13, Exhibit C)(emphasis added);

- the Plaintiffs **"not 'do business' (e.g. sell T-shirts) under the name 'Florida Tea Party . . . since the name is registered to me."** Id. at Exhibit D(emphasis added); and

- that Plaintiff The Naples Tea Party **"take a look at whether [you] need[] to get a new name"** because **"[l]ike it or not, the 'Tea Party' of the State of Florida" is entitled to protection under Fla.Stat. §103.081**, and that **"until the law is changed, I suggest obeying it."** Id. at Exhibit E (emphasis added).

In fact, the Defendants went so far as to point out that "the statute says that you can use the name of a registered political party in connection with your group if you have permission . . . **I wouldn't hold my breath waiting for that permission to come any time soon**." Id.  The Defendants have admitted that they believe that no group may use the term "Tea Party" without the

3

Defendants' permission, and that such permission will not be granted.  Taken together with the fact that such communications were sent by an attorney, that said attorney has cited Florida statutes as support for the position, and that the communications include not-so-veiled threats such as "until the law is changed, I suggest obeying it," it is beyond credibility for the Defendants to claim that there is no "'actual controversy' under 28 U.S.C. Section 2201 between Plaintiffs and Defendants as to the use of the name 'Tea Party.'"  (D.E. 19, ¶a).

The remaining arguments put forth in the Defendants' Motion to Dismiss are in the nature of a denial or avoidance of the allegations set forth in the Complaint rather than cogent legal argument as to why the Complaint "fails to state a cause of action" under 12(b)(6) or is not supported by subject matter jurisdiction under 12(b)(1).

## MEMORANDUM OF LAW

### 1. STANDARD

In deciding a Motion to Dismiss the Court "must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff."  See Eisenberg v. Standard Insurance Co., 2009 WL 3667086 (S.Dist. Fla. 2009)(Marra, J.); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  A complaint need only contain "a short plain statement showing an entitlement to relief" and must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id.  This pleading standard is "a liberal pleading requirement [and] does not require a plaintiff to plead with particularity every element of a cause of action."  Id.  The Complaint need only contain "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  Id.  Further, a plaintiff need not include highly detailed factual allegations.  Rather, a plaintiff need only plead sufficient facts "to raise a right to relief beyond the speculative level on the assumption that all of

the complaint's allegations are true." Id.(quoting Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009).

> As the Eleventh Circuit explained in Morrison v. Amway Corp.:
>
> Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks. Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

323 F.3d 920, 925 n. 5 (11th Cir.2003).

The arguments in Defendants' Motion to Dismiss centered on subject matter jurisdiction should be considered a facial attack, as the Defendants have not departed from the allegations of the Amended Complaint, nor have they presented any extrinsic evidence such as testimony or affidavits.

### 2. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SURVIVE A MOTION TO DISMISS

The Declaratory Judgment Act, 28 U.S.C. §2201, states in pertinent part "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of **any interested party** seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a)(emphasis added).

While the jurisdiction of the Court to issue a declaratory judgment is not mandatory, it is "designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and an adjudication would serve a useful purpose." See Eisenberg, 2009 WL 3667086 at *2 (quoting Allstate Ins. Co. v. Employers Liability Assur. Corp., 445 F.2d 1278, 1280 (5th Cir.

1971)).[1]

In actions brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, "the threshold question is whether a justiciable controversy exists." Cummins v. State Farm Mutual Auto-Mobile Ins. Co., 323 Fed.Appx. 847 (11th Cir. 2009)(quoting Atlanta Gas Light Co. v. Aetna Cas. and Surety Co., 68 F.3d 409, 414 (11th Cir. 1995)). To show a justiciable controversy and thereby invoke federal jurisdiction, the Plaintiffs must allege facts showing "at an irreducible minimum, [1] that at the time the complaint was filed, [they have] suffered some actual or threatened injury resulting from the defendant's conduct, [2] that the injury fairly can be traced to the challenged action, and [3] that the injury is likely to be redressed by favorable court disposition." Id. The controversy must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.

The Plaintiffs' Amended Complaint contains sufficient factual allegations to meet each of the three elements discussed in the Cummins case. Specifically, the first and second elements above, namely, that the Amended Complaint contains allegations that "at the time the complaint was filed, [Plaintiffs] suffered some actual or threatened injury resulting from the defendant's conduct," and that the injury can be fairly traced to the Defendants is satisfied by at least the following factual allegations of the Amended Complaint:

- That the Plaintiffs are using the term "Tea Party" and/or similar terms such as "South Florida Tea Party," "United American Tea Party," "Naples Tea Party," "Florida Tea Party," "Martin 9/12 Tea Party Committee," "Columbia South Carolina Tea Party," "Treasure Coast Tea Party," "Jackson Tea Party," "Waco Tea Party," "North Lake Tea Party," "tri-Cities Tea Party," "Port Huron Tea Party," "Tea Party Solutions," and other similar terms. (D.E. 11, ¶¶5, 7, 8, 10, 11, 12, 16, 19, 22, 24, 30, 38, 44, 45, 47, and 48);

- "the remaining Plaintiffs are either non-profit corporations, or groups of

---

[1] The decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to and including September 30, 1981 are binding precedent in the Eleventh Circuit. See Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

concerned citizens that utilize the phrase 'Tea Party' in connection with their organization's name, or promotional activities." Id. at ¶49;

- "Defendants have sent threatening letters and otherwise have engaged in an oral and written campaign to assert intellectual property rights over the phrase 'Tea Party.'" Id. at ¶56;

- "Defendants have also claimed the exclusive and monopolistic right **to exclude all 'persons**, groups, and organizations' from using the name 'TEA PARTY' or any confusingly similar designation, unless such persons, groups, or organizations are grant[ed] affiliate party status." Id. at ¶57(emphasis added);

- "The fact that Defendant O'NEAL is an attorney and personally issued the threats to at least some of the Plaintiffs, presents a realistic threat of litigation in the minds of all of the Plaintiffs since they are similarly situated." Id. at ¶60;

- "Defendants demanded that the[] Plaintiffs cease use of the phrase "Tea Party" on at least two recent occasions." Id. at ¶63;

- Attorney O'Neal sent at least one email stating that "you really need to stop using 'Florida Tea Party' on your website.  Ask your attorney to take a look at Section 865.09 Florida Statutes." Id. at ¶63, 64, and Exhibit C.

- "Defendants have claimed superior right in 'TEA PARTY'" and have asserted that Plaintiffs should "not 'do business' (e.g. sell T-shirts) under the name 'Florida Tea Party' . . . since the name is registered to me." Id. at ¶65, 66, and Exhibit D;

- "Defendant O'NEAL has also recently claimed that (on January 10, 2010) that Plaintiff Naples Tea Party's use of the phrase "Tea Party" is a violation of Florida Statute Section 103.81." Id. at ¶68; and

- That the Defendants stated that "the statute says that you can use the name of a registered political party in connection with your group if you have permission . . . I wouldn't hold my breath waiting for that permission to come any time soon." Id.

The third element, namely, allegations "that the injury is likely to be redressed by favorable court disposition" is met by at least the following allegations made in the Amended Complaint:

- "The Plaintiffs' state of legal uneasiness requires a Court Order where the parties . . . will be protected from defendants' overreaching claim of intellectual property or other rights in the phrase "TEA PARTY." Id. at ¶72; and

- "Plaintiffs seek immediate judicial resolution to these disputes such that they will not have to await the commencement of legal action by any of the Defendants. Since the Tea Party movement is in the media on a daily basis, the Plaintiffs believe that an immediate judicial resolution of the matter is appropriate to avoid

further delay and public confusion." <u>Id</u>. at ¶78.

As to the individual counts listed in the Amended Complaint, Plaintiffs have met the <u>Cummins</u> elements for each.  Specifically:

Count I, Declaratory Judgment re: Fla. Stat. §103.081

The Defendants specifically threatened legal action with regard to Fla. Stat. §103.081 and asserted that the Plaintiffs were in violation of the statute vis-à-vis the Defendants' alleged registration of the term "Tea Party."  <u>Id</u>. at ¶68 and Exhibit E.[2]

The above assertion of rights and reliance on Fla. Stat. §103.081 constitutes a threatened injury resulting from Defendants' conduct, namely, the threat of a lawsuit to enforce alleged rights under the statute.  That injury is likely to be redressed by favorable Court disposition as a declaratory judgment in Plaintiffs' favor will determine the rights and obligations of the parties under Fla. Stat. §103.081 to use or not use the phrase "tea party."

Furthermore, while the discreet examples of Defendants' threats set forth in the Amended Complaint were only directed at some of the Plaintiffs, all of the Plaintiffs are similarly situated, use terms which are substantially similar to the terms which the Defendants are claiming exclusive rights over, namely, "Tea Party" and/or "Florida Tea Party," are in reasonable apprehension of litigation, and are this "interested parties" for the purposes of 28 U.S.C. §2201(a).

Despite the above, the Defendants claim that "Plaintiffs have an adequate remedy at law for their 'uncertainty' over the use of the name 'Tea Party."  That remedy is to request a written opinion from the Florida Division of Elections, per the provisions of Section 106.23(2), Florida Statute."  (D.E. 19, ¶d).  This however, is irrelevant.  Assuming, *arguendo*, that the Defendants are

---

[2] In their Motion to Dismiss the Defendants claim that §103.081(2) is a criminal statute.   However, the Defendants provide no specific support for this claim and the Plaintiffs have likewise found no support for the claim.  In any event, it is not the possible criminal repercussions that Plaintiffs complain of herein.  Rather, the Defendants have repeatedly made threats in their own names and have wielded §103.081(2) as the authority for such claims.  Thus, a declaration of the parties' rights and obligations is still appropriate.

correct and that the Plaintiffs can request and receive "a written opinion from the Florida Division of Elections, per the provisions of Section 106.23(2)," the Defendants have not argued that this in any way precludes the Plaintiffs' from seeking a declaration of rights from the Court.  In any event, the Defendants are incorrect in their statement that such a written opinion would be an adequate remedy.  Fla.Stat. §106.23(2) provides a mechanism whereby individuals may seek an advisory opinion "with respect to actions such . . . person or organization has taken or plans to take" which "relat[e] to any provision or possible violation of Florida election law."  However, as stated throughout this Memorandum, this dispute centers on trademark law as codified in the Lanham Act, the First Amendment, and the Doctrine of Preemption under the Supremacy Clause.  This dispute is **not** about Florida elections law.  At most, the dispute can be characterized as one highlighting a conflict between Florida elections law and federal law.  Thus, an opinion letter from the Florida Division of Elections would not resolve this dispute.

In any event, the Plaintiffs have plead sufficient facts to establish standing to bring a declaratory judgment action concerning Fla. Stat. §103.081 and have stated a cause upon which relief may be granted such that Defendants' Motion to Dismiss should be denied.

<u>Count II, Declaratory Judgment re: Fla. Stat. §865.09</u>

The Defendants specifically threatened legal action with regard to Fla. Stat. §865.09 and asserted that the Plaintiffs were in violation of the statute vis-à-vis the Defendants' alleged registration of the term "Tea Party."  <u>Id</u>. at ¶63, and D.E. 13, Exhibit C.[3]  Specifically, the Defendants demanded that the Plaintiffs "stop using 'Florida Tea Party' on your website.  Ask your

---

[3] In their Motion to Dismiss the Defendants claim that §865.09 is a criminal statute.   While true, it is not the possible criminal repercussions that Plaintiffs complain of herein.  Rather, the Defendants have repeatedly made threats in their own names and have wielded §865.09 as the authority for such claims.  Thus, a declaration of the parties' rights and obligations is still appropriate.  Further, §865.09 provides criminal penalties, not against third parties, but against companies who fail to register their own fictitious names.  Despite this fact, the Defendants are attempting to use §865.09 as a sword against third parties such as the Plaintiffs.

attorney to take a look at Section 865.09, Florida Statutes." <u>Id</u>.

Furthermore, while the discreet examples of Defendants' threats set forth in the Amended Complaint were only directed at some of the Plaintiffs, all of the Plaintiffs are similarly situated, use terms which are substantially similar to the terms which the Defendants are claiming exclusive rights over, namely, "Tea Party" and/or "Florida Tea Party," are in reasonable apprehension of litigation, and are this "interested parties" for the purposes of 28 U.S.C. §2201(a).

The above assertion of rights and reliance on Fla. Stat. §865.09 constitutes a threatened injury resulting from Defendants' conduct, namely, the threat of a lawsuit to enforce alleged rights under the statute; that injury is likely to be redressed by favorable Court disposition as a declaratory judgment in Plaintiffs' favor will determine the rights and obligations of the parties under Fla. Stat. §865.09 to use or not use the phrase "tea party."

<u>Count III, Declaratory Judgment of Non-Infringement of Trademark</u>

The tone and subtext of Defendants' repeated threats and demands concerning the "use" of the phrase "Tea Party" can best be characterized as an assertion of trademark rights under the Lanham Act.[4]

Ordinarily an assertion of trademark rights and infringement thereof requires that the asserting party allege prior rights in and to the trademark and that the infringing party make "use" of the trademark in commerce.  <u>See</u> <u>1-800 Contacts, Inc. v. WhenU.Com, Inc.</u>, 414 F.3d 400, 406-07 (2d Cir. 2005)(listing the elements of a Lanham Act claim for unfair competition/trademark infringement).  This is precisely what the Defendants attempted to do with their December 12, 2009 email reproduced in the Amended Complaint in paragraph 65 and attached thereto as Exhibit D. Specifically, the Defendants demanded that the Plaintiffs "not 'do business' (e.g. sell T-shirts)

---

[4] In fact, it is not in dispute whether a political party can have trademark rights; they can.  For example, the Republican National Committee owns U.S. Trademark Registration No. 2,110,224 for "GOP" for use in connection with a variety of goods and services including fundraising activities, shirts, educational services, paper flags, and stickers.

under the name 'Florida Tea Party . . . since the name is registered to me." <u>Id</u>.  This is a textbook assertion of trademark rights in and to the term "Florida Tea Party" or "Tea Party" for use in commerce in connection with T-shirts and related goods and/or services.  <u>See</u> <u>Pudenz v. Littlefuse, Inc.</u>, 177 F.3d 1204 (11th Cir. 1999)(invalidating the defendant's trade dress rights in a declaratory judgment action commenced after the defendant sent the plaintiff a letter claiming to have "registered" rights).

As alleged in the Amended Complaint, the above threat by the Defendants "was reasonably understood [by all Plaintiffs] to mean that Defendant O'NEAL was asserting some intellectual property or other right in the phrase 'TEA PARTY.'  These threats have placed the Plaintiffs in a reasonable fear that they will be sued by the Defendants for Trademark Infringement."  (D.E. 11, ¶¶100-101).  <u>See</u> <u>National Rural Elec. Ass'n v. National Agric. Chem. Ass'n</u>, 26 U.S.P.Q.2d 1294 (D.D.C. 1992)(granting preliminary injunction against use of an infringement of a political action committee's trademark).

The Defendants' threats and the allegations noted above are sufficient to meet the elements set out in the <u>Cummins</u> case. Thus, defendants' Motion to Dismiss should be denied as to Count III.

<u>Count IV, Declaratory Judgment: Free Speech To Use "Tea Party"</u>

Through the acts set out above and as alleged in the Amended Complaint, the Defendants are acting through the guise of an allegedly registered political party and through Fla. Stat. §§103.081 and 865.09, thus as state actors, to chill the Plaintiffs' First Amendment Freedom of Speech with regards to the term "Tea Party."  <u>See</u> <u>Siegel v. LePore</u>, 234 F.3d 1163, 1205 (11th Cir. 2000)(noting that "when a political party uses state machinery and exercise prerogatives it is given under state law . . . it is a state actor subject to the same constitutional constraints that protect

11

citizens from the state and its officials").[5]  For instance, as the Defendants suggest, if Plaintiffs must seek an advisory opinion from the Florida Division of Elections, then the Defendants are forcing state action by requiring that all "Tea Party" groups seek the prior permission of the State before they can use the phrase "Tea Party" in a descriptive sense for protest activities.

Such actions constitute a threatened injury resulting from Defendants' conduct, namely, the chilling of the Plaintiffs' freedom of speech.  The dispute and injury in question is likely to be redressed by favorable Court disposition as a declaratory judgment in Plaintiffs' favor will determine the rights and obligations of the parties to use or not use the phrase "tea party."

<u>Count V, Declaratory Judgment: Right of Association</u>

Through the acts set out above and as alleged in the Amended Complaint, the Defendants are acting through the guise of an allegedly registered political party and through Fla. Stat. §§103.081 and 865.09, thus as state actors, to chill the Plaintiffs' First Amendment right of association, specifically, to organize "Tea Parties" in protest of certain government actions.  <u>See Siegel</u>, 234 F.3d at 1205.[6]  Such acts by the Defendants constitute a threatened injury resulting from Defendants' conduct, namely, an infringement of the Plaintiffs' right of association.  The dispute and injury in question is likely to be redressed by favorable Court disposition as a declaratory judgment in Plaintiffs' favor will determine the rights and obligations of the parties as to their respective right organize or not organize said "tea parties."

<u>Count VI, Declaratory Judgment: Pre-Emption</u>

Through the acts set out above and as alleged in the Amended Complaint, the Defendants

---

[5]  While the quoted language from the <u>Siegel</u> case concerns "counting or alter[ing] the effect of votes," freedom of speech and association should be treated in a similar fashion as voting rights as all are "fundamental rights" entitled to the same level of protection.  <u>See</u> <u>Carrington v. Rash</u>, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965) (noting that the right to vote is a fundamental right); and <u>O'Hair v. White</u>, 675 F.2d 680, 689 (5th Cir. 1982)(listing "[o]ne's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly" as "fundamental rights")
[6]  <u>See</u> fn5 supra.

are acting through the guise of an allegedly registered political party and through Fla. Stat. §103.081 to frustrate the purpose of the Lanham Act.  Specifically, the Lanham Act creates protections for trademarks used in commerce, and affords those with the longest continuous use the greatest protection for their respective trademarks.  See McCarthy On Trademark and Unfair Competition, §16:4 (4th Ed. 2006)(noting that "[t]he cases are legion . . . ownership is governed by priority of use.  For such marks, the first to use a designation . . . is the 'owner' and the 'senior user.'  These marks are given legal protection against infringement **immediately** upon adoption and use in trade.")(emphasis added).  Furthermore, the Lanham Act affords certain defenses to infringement such as: that the trademark alleged to be infringed is unenforceable as generic, is merely descriptive, or is weak due to extensive third party use.  The Defendants' position and Fla. Stat. §103.081 are in conflict with these rights and defenses set out in the Lanham Act.

As alleged in the Amended Complaint, the Defendants are, in conflict with the Lanham Act, attempting to use Fla. Stat. §103.081 to circumvent the prior rights (if any) and fair use trademark defenses available to the Plaintiffs.  (D.E. 11, ¶¶124-126).

The Defendants cite Communications v. City of Montgomery, Alabama, 806 F.Supp. 1518, 1540 (M.D. Ala. 1992) for the general proposition that the Lanham Act does not preempt state trademark protection, but instead "the Lanham Act sets a protective floor only and does not interfere with state laws which provide additional trademark protection.  The act preempts only those state laws which directly conflict with its provisions or purposes by permitting an erosion of trademark rights."  The Defendants then go on to argue, incorrectly, that "there is nothing in Section 103.081 which permits 'erosion of trademark right.'"  This statement betrays the Defendants' basic misunderstanding of trademark doctrine under the Lanham Act.  Trademark rights under the Lanham Act are based primarily on the notion that parties with prior continuous use of protectable

terms have superior rights to use of the term over subsequent users.  See McCarthy, §16:4.

However, Fla. Stat. §103.081 reads, in pertinent part, as follows:

(2)  No person or group of persons shall use the name, abbreviation, or symbol of any political party, the name, abbreviation, or symbol of which is filed with the Department of State, in connection with any club, group, association, or organization of any kind unless approval and permission have been given in writing by the state executive committee of such party. This subsection shall not apply to county executive committees of such parties and organizations which are chartered by the national executive committee of the party the name, abbreviation, or symbol of which is to be used, or to organizations using the name of any political party which organizations have been in existence and organized on a statewide basis for a period of 10 years.

See Fla. Stat. §103.081(2).

Fla. Stat. §103.081, as the Defendants intend to have it apply, erodes the trademark rights of organizations, which could include the Plaintiffs and others if "Tea Party" were a protectable trademark, who use or used a particular designation (in this case designations using the phrase "Tea Party") prior to the Defendants' registration of that phrase as a supposed political party with the Florida Department of State.  Admittedly, the statute provides a prior use defense.  See Fla.Stat. §103.081(2).  However, the prior use defense set out in the statute requires ten (10) years of prior use before the defense applies.  This ten (10) year rule is directly contrary to traditional trademark laws and the Lanham Act.  Specifically, the ten year requirement erodes the trademark protections afforded by the Lanham Act, as the Lanham Act provides potential rights to prior users of a designation irrespective of whether such use precedes the infringer by a day or a decade.  See McCarthy, §16:4.  The fact that there is a reference to prior use in the statute supports Plaintiffs' argument that the Florida statute acknowledges trademark law, but erodes the rights traditionally afforded under the Lanham Act.

Further, Fla. Stat. §103.081 should not only be deemed preempted by the Lanham Act, but should be preempted by the First Amendment.  Specifically, at the cross section of trademark rights

14

and the First Amendment is the Doctrine of Fair Use. <u>See See</u> McCarthy, §11:45.  The Doctrine of Fair Use protects individuals using a particular term, phrase, or symbol from allegations of misuse (i.e. infringement, misappropriation, etc.) when the term, phrase, or symbol is merely descriptive of the goods or services offered and where the alleged trademark has not acquired secondary meaning. <u>Id</u>.  As alleged in the Amended Complaint, the term "Tea Party" is just such an unprotectable descriptive term in the political field.[7]  (D.E. 11).  Fla. Stat. §103.081, as threatened to be applied by the Defendants, is in direct conflict with the First Amendment principle of Fair Use as it purports to give protection to such unprotectable terms.

Given the above, the Plaintiffs have made sufficient allegations in the Amended Complaint to show that: 1) at the time the complaint was filed, the Plaintiffs suffered some threatened injury resulting from the Defendants' threats, 2) that the injury fairly can be traced to the challenged action, and 3) that the injury is likely to be redressed by favorable court disposition.  Thus, Defendants' Motion to Dismiss should be denied as to Count VI.

<u>Count VII, False Association Under the Lanham Act</u>

The Defendants argue that Plaintiffs' claim for false association under the Lanham Act should be dismissed because "Plaintiffs' prayer for relief [requests that] '[t]he phrase 'Tea Party' as used in connection with political parties, movements, or other political activities [be found] weak in the hierarchy of trademark protection, and thus, [] entitled to no trademark protection."  (D.E. 19, ¶h).  However, the Defendants misunderstand the claim.  Plaintiffs are not seeking to enforce any rights in the phrase "Tea Party" or "Florida Tea Party."  Rather, Plaintiffs are seeking to stop confusion amongst the public caused by Defendants' actions.

15 U.S.C. §1125 prohibits "**[a] person [from] on or in connection with any goods or services . . . us[ing] in commerce any word, term, name . . . which-- (A) is likely to cause**

---

[7] However, it may be protectable for other arbitrary goods or services.

**confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person**.”  See 15 U.S.C. §1125(a)(1)(A).  It is Plaintiffs’ contention that the Defendants’ use, and more particularly their registration, of the phrase “Tea Party” and/or “Florida Tea Party” is creating confusion, mistake, and deception among the public as to the affiliation between the Plaintiffs and Defendants.  Specifically, Defendants’ actions are creating the false impression that the Defendants are somehow affiliated with the Plaintiffs and the non-party grassroots “Tea Party” movement.

As the Plaintiffs spelled out in great detail in the Amended Complaint, the Plaintiffs and the “Tea Party” movement are the antithesis of a political party.  (D.E. 11, ¶¶43-55, and ¶132).  The Defendants’ action are creating a false association whereby the public at large are lead to believe that the “Tea Party” movement has organized into a political party by and through the Defendants; however, this is simply not the case.

This false association is damaging the Plaintiffs as many, if not most of the supporters of and participants in the “Tea Party” movement are and will be less likely to continue to be a part of the “Tea Party” movement if they believe that the movement has turned away from its grassroots beginnings.

Furthermore, even if the Plaintiffs were claiming some trademark rights in and to the term “Tea Party” (which they are not), the Defendants fail to recognize that the Plaintiffs are well within their rights to plead in the alternative.  Rule 8(d)(2), Fed.R.Civ.P., allows parties to “set out two or more statements of a claim . . .  alternatively or hypothetically, either in a single count . . . or in separate ones.”  See Indulgence Yacht Charter, Ltd v. Ardell, Inc., 2008 WL 4346749 *6 (S.D.Fla. 2008)(quoting Fed.R.Civ.P. 8(d)(2)).  In fact, “[a] party may state as many separate claims . . . as it has, regardless of consistency.”  Id. (quoting Fed.R.Civ.P. 8(d)(3)).  Just as in the Indulgence case

16

the court stated that "IYC may plead that Ardell and Sharpe's actions are governed by a contract in one claim and simultaneously assert that no contract governs in other claims," Plaintiffs may plead that "Tea Party" is not subject to protection in one count and also plead that they hold rights to "Tea Party" in another count. Id.  Until evidence is presented, the Plaintiffs may plead in the alternative. Id.; see also McCarthy v. Barnett Bank of Polk County, 750 F.Supp 1119, 1126 (M.D.Fla. 1990)("Plaintiffs may plead in the alternative. Dismissal of one count or the other, if necessary, can await proof at trial.").

The above allegations are sufficient to put the Defendants on notice of the claims brought against them, and contain sufficient factual allegations to rise beyond mere legal conclusions and "to raise a right to relief beyond the speculative level on the assumption that all of the complaint's allegations are true." Id. (quoting Twombly, 550 U.S. at 544).  Thus, Defendants' argument that the Plaintiffs' Amended Complaint lacks sufficient factual allegations to state a claim should fail, and the Motion to Dismiss should be denied.

### 3.  SUBJECT MATTER JURISDICTION

#### a.  All Plaintiffs Have Alleged A Case Or Controversy Sufficient To Establish Standing

As already set out above in detail, the Plaintiffs have made sufficient factual allegations to show that a case or controversy exists such that it is appropriate for the Plaintiffs to bring their respective declaratory judgment claims.  The Defendants have also argued that not all the Plaintiffs have been equally targeted with respect to their use of names containing the term "Tea Party." However, all of the Plaintiffs are similarly situated and have made sufficient allegations to place them all in imminent fear of litigation such that a declaratory judgment is appropriate.  Specifically, and as alleged in the Amended Complaint, all of the Plaintiffs use the phrase "Tea Party" or similar phrases as part of their political activities.  (D.E. 11).  It is reasonable for each of them to fear

17

imminent legal threat by the Defendants.

The Defendants' claim to be the registrant of the phrase "Tea Party" and/or "Florida Tea Party" is a direct affront to the continued rights of the Plaintiffs to use their respective names.  As succinctly stated by the United States District Court for the District of New Jersey:

> [t]he mere existence of a cloud, the denial of a right, *the assertion of an unfounded claim,* the existence of conflicting claims, the uncertainty or insecurity occasioned by new events-these phenomena constitute operative facts, the cause for action which creates the 'right of action.' The court in rendering a judicial declaration of rights thus becomes an instrument not merely of curative but also of preventive justice.

See Ethicon, Inc. v. American Cyanamid, Co., 369 F.Supp. 934, 937 (Dist.N.J. 1973) (italics original).  The Defendants' assertion of rights to the phrase "Tea Party" and other similar phrases creates an "unfounded claim" and placed a cloud, [and] the denial of a right" such that the jurisdiction of the Court should be exercised as a tool of "preventive justice."  All Plaintiffs are under a cloud of uncertainty or insecurity relating to the Defendants' registration of "Tea Party" and/or "Florida Tea Party" as a political party, and the Defendants' subsequent claims of rights stemming therefrom.

**b.  <u>The Claims Are "Ripe" For Adjudication</u>**

The Defendants spend much time and effort arguing that the Plaintiffs' claims are "not ripe."  (D.E. 19, ¶¶e, h, j, w, gg, hh, ii, jj, and kk).  For example, the Defendants assert that "Plaintiffs have failed to allege sufficient 'facts' to show that any 'actual controversy'  . . . is now ripe . . . . In particular, Plaintiffs have failed to allege facts showing that they requested and were denied permission to use 'Tea Party' in their organizational name."  Id. at ¶e.  Assuming that Plaintiffs were even required to first ask and then be denied permission to use "Tea Party" by the Defendants before this case became ripe for adjudication (and Plaintiffs deny that such is necessary), the Defendants have overlooked pertinent facts and allegations.  Among the myriad

18

allegations already set out above which satisfy the ripeness requirement, Plaintiffs included the Defendants' January 10, 2010 email in their Amended Complaint.  (D.E. 11, ¶68; and D.E. 13, Exhibit E).  This email from the Defendants to at least one of the Plaintiffs specifically says "the statute says that you can use the name of a registered political party in connection with your group if you have permission . . . **I wouldn't hold my breath waiting for that permission to come any time soon**."  Id. (emphasis added).  Based on such communications from the Defendants, it appears clear that permission to use the term "Tea Party" has been denied.  Thus, the dispute has fully ripened.

In any event, Plaintiffs do not need to ask for and be denied permission to use the term "Tea Party" in order for this case to be ripe.  The mere fact that the Plaintiffs are holding themselves out as the "gatekeepers" for use of the term, and thereby purporting to own and control use of the same is enough.  See Ethicon, Inc. v. American Cyanamid, Co., 369 F.Supp. 934, 937 (Dist.N.J. 1973)(noting that "[t]he mere existence of a cloud, the denial of a right, *the assertion of an unfounded claim,* the existence of conflicting claims, the uncertainty or insecurity occasioned by new events-these phenomena constitute operative facts, the cause for action which creates the 'right of action.' The court in rendering a judicial declaration of rights thus becomes an instrument not merely of curative but also of preventive justice.")(italics original).

Thus, this case is ripe for adjudication.

### c.   The Amended Complaint Does Not Raise A Political Question

In their Motion to Dismiss the Defendants erroneously argue that the Plaintiffs' Amended Complaint presents a non-justiciable "political question."  Ostensibly this argument is based on the fact that the Defendants purport to have registered a political party and that the Amended Complaint mentions the word "political" numerous times.  However, that is far from creating a non-justiciable political question.

19

"**The political question doctrine** emerges out of Article III's case or controversy requirement and **has its roots in separation of powers concerns**."  See Made in the USA Found. v. United States, 242 F.3d 1300, 1312 (11th Cir. 2001)(emphasis added).  The Defendants have failed to make any cognizable argument as to how any of Plaintiffs claims interfere with the separation of powers, or otherwise constitute a political question.

In Baker v. Carr, 369 U.S. 186 (1962) the Supreme Court set out six factors to be considered in determining whether a claim includes a non-justiciable political question.  Specifically, a court should consider whether a claim requires:   1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; 2) a lack of judicially discoverable and manageable standards for resolving it; 3) the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion; 4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; 5) an unusual need for unquestioning adherence to a political decision already made; or 6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.  See Baker, 369 U.S. at 217.  None of these elements is present in the instant dispute, nor have the Defendants been able to effectively argue that any are present.

Defendants attempt to argue that the second and third Baker factors are present, but fail.  (D.E. 19, ¶xx).  Specifically, the Defendants argue that the Plaintiffs' claims include "a lack of judicially discoverable and manageable standards for resolving the issues," and that "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion [exists]."   Id.  In support of this, the Defendants assert that the Amended Complaint includes the word "political" over 40 times, and reproduces many of the background facts plead in the complaint as "proof" that the dispute is political in nature.  However, no matter how many times

Plaintiffs say the word "political," this alone is not enough to raise a "political question."

The Defendants rely on <u>Carmichael v. Kellogg, Brown & Root Services, Inc.</u>, 572 F.3d 1271 (11th Cir. 2009) in support of their claim that Plaintiffs' Amended Complaint contains non-justiciable political questions.  However, the <u>Carmichael</u> case is wholly distinguishable from the instant dispute and entirely inapplicable.  For one, a finding for the plaintiff in the <u>Carmichael</u> case would have required "extensive reexamination and second guessing of many sensitive judgments surrounding the conduct of a military convoy in war time-including its timing, size, configurations, speed, and force protection."  <u>Carmichael</u>, 572 F.3d at 1275.  Adjudicating the instant dispute would not require any of these considerations.  Rather, this case, is at its core, a trademark case seeking a declaration that the Defendants do not have exclusive rights to the use of a disputed term.  No second guessing of any action taken by the Court's sister branches is required.

Specific to the Defendants' argument that Plaintiffs' claims include "a lack of judicially discoverable and manageable standards for resolving the issues," the lower court in <u>Carmichael</u> case determined (and the Circuit Court agreed) that given the highly unusual circumstances under which the accident occurred-particularly, the fact that the "rollover took place on a route notorious for lethal insurgent activity while Irvin helped to transport jet fuel from one military camp to another as part of [a] convoy" – there was "no judicially discoverable and manageable standards for resolving Plaintiffs [sic] claims."  <u>Id.</u> at 1279.  Further, the court determined that "'the question before the Court would be what a reasonable driver subject to military control over his exact speed and path would have done.'  We do not face the question of whether the defendants drove a fuel truck unsafely, say on Interstate I-95 between Miami, Florida and Savannah, Georgia.  Simply put, we have no readily available judicial standard with which to answer this question."  <u>Id</u>. at 1289.

In the instant dispute, the Court does have readily available judicial standards, namely, the

above cited elements for a claim for false association, for a declaratory action concerning non-infringement of Defendants' alleged rights and "registration" of "Tea Party," for a claim of violation of First Amendment Rights, and for a claim of preemption.  None of the factual circumstances present in this dispute bear even a remote resemblance to the difficulties present in the Carmichael case.

The Defendants also rely on the Carmichael case for their argument that the Plaintiffs' claim presents a political question under the third Baker factor. (D.E. 19, ¶xx).  However, not only is the Carmichael case factually distinguishable from the instant dispute, the Carmichael case does not even address the third Baker factor in any substantive way.  In any event the third Baker factor, namely, "the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion" is not applicable to the instant dispute.  Nothing about the Plaintiffs' claims requires the Court to make a policy determination.  In fact, the Defendants' Motion is silent on exactly what policy the Plaintiffs' Amended Complaint would have the Court decide.  Again, the political background of the parties is irrelevant to the fact that this is, at heart, an action seeking a declaration of the rights and obligations of the parties with respect to the use of the term "Tea Party," and nothing more.  Thus, the Plaintiffs' do not raise a non-justiciable political question.

Given the above, Defendants' Motion to Dismiss should be denied.

## MOTION FOR LEAVE TO AMEND

In the unlikely event that this Court grants Defendants' Motion to Dismiss, Plaintiffs respectfully request leave of the Court to prepare and file a Second Amended Complaint. See Cummins, 323 Fed.Appx. at 848 (reversing the District Court's dismissal of the Amended Complaint with prejudice "[b]ecause the existence of a justiciable controversy is a jurisdictional requirement . . . the district court lacked jurisdiction and should have dismissed the action without

prejudice.").

WHEREFORE, Plaintiffs respectfully request that the Court deny the Defendants' Motion to Dismiss the Amended Complaint, or in the alternative that the Court grant the Plaintiffs leave to file a Second Amended Complaint.

Dated: March 22, 2010

Respectfully submitted:

By: ___s/FRANK HERRERA____
Frank Herrera
Florida Bar No.: 494801
fherrera@qpwblaw.com
Gustavo Sardiña
Florida Bar No.: 31162
gsardina@qpwblaw.com
QUINTAIROS, PRIETO, WOOD & BOYER, P.A.
9300 South Dadeland Boulevard,
Fourth Floor
Miami, Florida 33156
Tel.: (305) 670-1101
Fax.: (305) 670-1164
**Counsel for Plaintiffs**

<u>**CERTIFICATE OF SERVICE**</u>

I GUSTAVO SARDIÑA HEREBY CERTIFY that a true copy hereof has been was filed via the Court's CM/ECF online filing system, and that the same is being served on the Defendants, namely:

The Tea Party and
Frederic B. O'Neal, Esq.
P.O. Box 842
Windermere, Florida 34786

Nicholas Egoroff
5402 Andover Drive
Orlando, Florida 32812

Douglas Guetzloe
P.O. Box 531101
Orlando, Florida 32853

via U.S. Mail this 22nd day of March, 2010.

By: _s/GUSTAVO SARDIÑA____
Gustavo Sardiña