IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED by _____ D.C.

MAY 10 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

SOUTH FLORIDA TEA PARTY, INC.,
*et al.*,

      Plaintiff(s),

vs.                        CASE NO. 9:10-CV-80062-MARRA/JOHNSON
                                  (Judge Kenneth A. Marra)

TEA PARTY, *et al.*,

      Defendant(s).
_____/

## DEFENDANTS, TEA PARTY AND O'NEAL'S RULE 11 MOTION FOR SANCTIONS AGAINST PLAINTIFFS WILKINSON AND McCLELLAN

Pursuant to Rule 11(c) ("**Sanctions**"), Fed.R.Civ.P., Defendant, FREDERIC B. O'NEAL a/k/a "Fred O'Neal," ("Defendant O'Neal" or "O'Neal"), in his individual capacity and the TEA PARTY ("Defendant Tea Party" or "Tea Party"), an unincorporated Florida political party, by and through O'Neal in his official capacity as its chairman and sole officer, move this Court to impose sanctions against the Plaintiffs, EVERETT WILKINSON ("Wilkinson") and TIM McCLELLAN ("McClellan"), and their counsel of record herein, jointly and severally, for violation of the standards of Rule 11(b)(1), (2), and (3), Fed.R.Civ.P., in filing their Amended Complaint.

1

In support hereof, Defendants O'Neal and Tea Party would show this Court the following:

### Rule 11(b)(1) – improper purpose

(a) On August 7, 2009, Defendant O'Neal formed Defendant Tea Party.

(b) On August 31, 2009, Jim Greer, former Chairman of the Republican Party of Florida, removed Co-Defendant Egoroff from the Orange County Republican Executive Committee. At the same time, Greer suspended Co-Defendant Guetzloe from the same Committee.

(c) Prior to their suspension and removal by Greer, Co-Defendants Guetzloe and Egoroff had been active and vocal opponents of those persons in the leadership of the Republican Party of Florida who favored accepting Federal stimulus money, increasing spending on public projects and a philosophy that believed it to be a proper role of government to use tax money to subsidize such big businesses as railroads and sugar growers (hereafter the "Republican Party Establishment").

(d) At the time of their removal and suspension, both Egoroff and Guetzloe had been clients of O'Neal.

(e) Having been, essentially, "kicked out" of the Republican Party, yet still wanting to remain politically active, Egoroff and Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party.

(f) In early December, 2009, a critical vote occurred in the State Legislature over whether to accept federal stimulus money in order to proceed with a commuter rail project in Central Florida commonly known as "SunRail."

(g) O'Neal publicly attacked the SunRail project as a "boondoggle" and stated the Tea Party would "target every Republican who votes for this boondoggle."

(h) Wilkinson publicly supported the SunRail project. Wilkinson is politically aligned with the Republican Party Establishment. McClellan is also politically aligned with the Republican Party Establishment.

(i) On December 10, 2009, an article appeared in the Orlando Sentinel about O'Neal's statement that the Tea Party would target legislators who voted for the SunRail project. Both Wilkinson and Guetzloe weighed in on the article on the Sentinel's Internet blog seeking comments about the article. In his comments, Wilkinson attacked both Guetzloe and O'Neal.

(j) Shortly thereafter, O'Neal tried to reach out to Wilkinson. Wilkinson rebuffed O'Neal's efforts and, instead, had his lawyer, Lucero, send O'Neal emails threatening and insulting O'Neal.

(k) Throughout December, 2009 and January, 2010, Wilkinson continued his Internet attacks against Defendants.

(l) On January 8, 2010, McClellan, who describes himself as a "political strategist" and an employee of the Broward County Republican Executive Committee, posted a two part article on the Internet in which he referred to Defendants as "unscrupulous people," a "dishonorable group" and a

"disgrace." He accused Defendants of "manipulation and misrepresentation." McClellan additionally attacked Defendants for opposing the SunRail project.

(m) On January 14, 2010, Wilkinson sent out a "Special Message Re: Political Party" in which he blasted Defendants as "political opportunists," "bullies" and people who were trying to "hijack" the Tea Party movement "for their own personal gain."

(n) On January 19, 2010, Wilkinson and McClellan and organizations they control filed the initial complaint herein. They hired a public relations firm to represent them. The principal in that firm is Michael Caputo who describes himself as a "GOP hit man." Caputo issued a press release about the lawsuit. In the press release, Caputo stated that the purpose of the lawsuit was to stop the Defendants from threatening Wilkinson and McClellan with "trademark litigation" (despite the fact that none of the Defendants have ever threatened anyone with "trademark litigation"). Caputo quoted Wilkinson as describing Defendants as "cynical forces" trying to "hijack" the Tea Party movement. Caputo referred to Guetzloe and Egoroff as "cashiered county GOP committeemen." The key sentence in the press release encourages Tea Party activists to work toward reform within the Republican Party, rather than supporting a third party.

(o) Between the time the initial complaint was filed and February 17, 2010, when Plaintiffs filed their Amended Complaint, Defendants tried to get the word out to Tea Party activists around the State of Florida that, contrary to the

allegations in Plaintiffs' initial complaint, they had no problem with Tea Party groups using the phrase "Tea Party" in their organizational names, provided the name was not confusingly similar to that of the Defendant Tea Party. During this interim period, Robin Stublen, the leader of the Punta Gorda Tea Party, approached Wilkinson and informed him of what Defendants were saying. Rather than dropping the lawsuit, Wilkinson warned Stublen <u>not</u> to tell any of the other Plaintiffs about Defendants' willingness to allow other groups to use the phrase "Tea Party" in their names or Wilkinson would sue Stublen as well.

(p) Since filing the Amended Complaint, McClellan tried to register a corporation with the same name as Guetzloe's company, Ax the Tax, Inc. He, Wilkinson, and Caputo maintain a steady campaign of harassing and denigrating Defendants and any candidates they support.

(q) In light of the above and in light of the knowingly disingenuous allegation in the Amended Complaint that Defendants are threatening to sue any organization which uses the phrase "Tea Party" in their organizational name, as well as in light of their doctoring of the January 10, 2010 email O'Neal sent to Barry Willoughby, it is obvious that the Amended Complaint is just another way Wilkinson, McClellan, and their "GOP hit man," Caputo continue to harass Defendants. Additionally, it is also obvious that their continuing to spread the false allegation that Defendants will to sue any organization which uses the phrase "Tea Party" in their organizational name is a tactic being used

5

      by Wilkinson, McClellan, and Caputo to drive a wedge between Defendants and Tea Party movement organizations and cause those organizations to stay within the Republican Party. But for the fact that O'Neal is an attorney, Defendants would not have had the financial resources to hire counsel to defend this action. Even so, the time it has taken O'Neal to respond to this lawsuit (well over 100 hours) has effectively neutralized him and removed him from any significant role he might otherwise have played in the functioning of the Tea Party over the past three months.

(r) In short, Wilkinson and McClellan filed the Amended Complaint for the above-stated improper purposes and not because they believed, as alleged, that Defendants were threatening to sue any organization which used the phrase "Tea Party" in its organizational name.

**Rule 11(b)(2) – lack of legal foundation for claims made in the Amended Complaint**

(s) At no point in these proceedings have Plaintiffs cited any legal authority, case law or otherwise, -

- supporting Plaintiffs' claim that they have a First Amendment right to use the phrase "Tea Party" in their organizational names;1

- or supporting Plaintiffs' claim that Section 103.081 or Section 865.09 or statutes like them somehow infringe on rights granted under the Lanham Act;

---

1 As an aside, the adjectives "republican" and "democratic" are just as widely used as the phrase "Tea Party" in political discussions. Where is the case law supporting a First Amendment right to use those adjectives in

- or supporting Plaintiffs' claim that Section 103.081 or Section 865.09 or statutes like them somehow infringe on Plaintiffs' First Amendment rights;

- or supporting Plaintiffs' claim that one who does not hold a trademark under the Lanham Act can sue under the Lanham Act for "false association;"

- or supporting Plaintiffs' claim that one who does not hold a trademark act under the Lanham Act can challenge a state statute as having been preempted by the Lanham Act;

- or supporting Plaintiffs' claim that one who merely has a "fear of possible litigation in the future" without facts showing a substantial likelihood that such litigation will occur has standing to sue for declaratory relief;

- or supporting Plaintiffs' claim that Defendants Guetzloe and Egoroff ever threatened anyone with anything regarding the use of the name "Tea Party;"

- or supporting the out-of-state Plaintiffs' claim of a legitimate fear there is a substantial likelihood of their being sued for violating a Florida statute;

- or supporting Plaintiffs' claim that there is a substantial likelihood that they will be sued for violation of the Lanham

an organizational name?

Act, despite the fact that neither Plaintiffs nor Defendants have registered or tried to register trademark rights to the name "Tea Party."

(t) In short, the claims made by Plaintiffs in this action are frivolous and without legal foundation.

### Rule 11(b)(3) – lack of evidentiary support

(u) As detailed in O'Neal and Tea Party's summary judgment motion, there is <u>no</u> evidentiary support for Plaintiffs' central claim that O'Neal has been threatening to sue any group which uses the phrase "Tea Party" in its organizational name.

(v) Apparently because Wilkinson and McClellan knew there was no evidentiary support for that claim, they committed a fraud on this Court by doctoring O'Neal's January 10, 2010 email to Barry Willoughby, as described in O'Neal's summary judgment motion.

### Memorandum of Law

(w) In its recent decision in the case of <u>Thomas v. Early County</u>, Case No. 09-12232, 2010 WL 27970 (11th Cir. January 7, 2010), the Eleventh Circuit outlined when awarding Rule 11 sanctions are appropriate.

> "Rule 11 prohibits three types of conduct: filing a pleading that has no reasonable factual basis; filing a pleading based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change the law; and filing a pleading in bad faith or for an improper purpose.
>
> "In this circuit, a court when confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively

frivolous – in view of the facts or law – and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." (Citations omitted). *Id.* at pp. 3-4.

### Summary

(x) Under the above stated law and facts, Rule 11 sanctions should be awarded against Plaintiffs Wilkinson and McClellan and their counsel of record.

Respectfully submitted by,

/Frederic B. O'Neal, Esq., individually
and in his official capacity as chairman
and sole officer of the Tea Party,
a registered Florida minor political party
Florida Bar No. 0252611
Frederic B. O'Neal, Esq.
P.O. Box 842
Windermere, FL 34786
(407) 719-6796
Fax (407) 292-5368
Fredonealatlaw@aol.com

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail delivery on this ___ day of April, 2010, to the following persons:

Frank Herrera
Quintaros, Prieto, Wood & Boyer, P.A.
9300 South Dadeland Blvd.
Fourth Floor
Miami, FL 33156

Timothy Lucero, Esq.
Lucero Law Group
10693 Wiles Road, Ste. 159

Coral Springs, FL 33076

*[signature]*
Frederic B. O'Neal, Esq., individually
and in his official capacity as chairman
and sole officer of the Tea Party,
a registered Florida minor political party
Florida Bar No. 0252611
Frederic B. O'Neal, Esq.
P.O. Box 842
Windermere, FL 34786
(407) 719-6796
Fax (407) 292-5368
Fredonealatlaw@aol.com