**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA**

SOUTH FLORIDA TEA PARTY, INC.,
A Florida non-profit corporation, et al.,

       Plaintiffs,

v.                        CASE NO.:  10-80062-CV-MARRA/JOHNSON

TEA PARTY, et al.

       Defendants.

_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS
"TEA PARTY" AND O'NEAL'S RULE 11 MOTIONS AGAINST ALL PLAINTIFFS**

Plaintiffs, by and through undersigned counsel, hereby file this Response in Opposition to

Defendants "Tea Party" and O'Neal's three separate Rule 11 Motions (D.E. 29, 30, and 31) as

follows:

**INTRODUCTION**

Defendants' position is so hopelessly mired in its own contradictions that their Motions

actually provide support for Plaintiffs' claims in this action.  The crux of the dispute between the

parties is that the Defendants, by and through Frederic O'Neal, an attorney, sent emails to at least

some of the Plaintiffs demanding that they stop using the phrase "Tea Party" (or phrases

incorporating "Tea Party) because the Defendants had "registered" that name, and cited Florida

law in support for their demands.  (D.E 11).  Rather than idly wait to be sued, the Plaintiffs

initiated the instant action seeking, among other relief, a declaration that their use of the phrase

"Tea Party" did not violate any rights which Defendants may or may not have, and that the

Defendants' "registration" of "Tea Party" did not give the Defendants exclusive rights to the

same.  Id.

1

Defendants moved to dismiss Plaintiffs' original Complaint and the Amended Complaint arguing that they have not threatened anyone with litigation over use of the phrase "Tea Party" and that they do not claim trademark rights therein.  (D.E. 9 & 19).

Ironically, Defendants' Rule 11 Motion states that:

> Between the time the initial complaint was filed and February 17, 2010, when Plaintiffs filed their Amended Complaint, defendants tried to get the word out to Tea Party activists around the State of Florida that . . . **[Defendants] ha[ve] no problem with Tea Party groups using the phrase 'Tea Party' in their organizational names, provided the name was not confusingly similar to that of the Defendant Tea Party**.

(D.E. 29, p. 5).

This statement is enough to make anyone familiar with trademark law dizzy.  The statement at once uses "tea party" as a generic or descriptive term that is not entitled to any trademark protection (referring to "Tea Party activists" and "Tea Party groups"), but then says that other parties may not use names that are "confusingly similar" to Defendants' "Tea Party" name.  This astounding contradiction alone should be sufficient to defeat Defendants' Rule 11 Motion and Defendants' pending Motion to Dismiss.  This is particularly so given that whether names are "confusingly similar" is at the heart of trademark law and infringement disputes.  See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 358 (11th Cir. 1997) (noting that in order to prevail on a claim under 15 U.S.C. §1125(a), a plaintiff must show "that the other party had adopted marks that were the same, or **confusingly similar** to, its mark"); Chanel, Inc. v. Mesadieu, 2009 WL 2496586 *5 (M.D.Fla. 2009)(noting that in order to prevail on a claim under 15 U.S.C. §1125(a), a plaintiff must show "that the other party had adopted marks that were the same, or **confusingly similar** to, its mark"); Nature's Life, Inc. v. Renew Life Formulas, Inc., 2006 WL 62829 *3 (D.Utah 2006)(in the context of a trademark case, the "**similarity of the marks constitutes the heart of our analysis**"); S.S. Kresge Co. v. United

Factory Outlet, Inc., 1980 WL 30273 *5 (D.Mass. 1980)(in the context of a trademark case, "**the heart of the action is** an attempt to profit from the good will of another by . . . **adopting a confusingly similar term**.")(emphasis added); see also 15 U.S.C. §1114(1)(a) (creating a cause of action under the Lanham Act for use of a "copy, or colorable imitation of a registered mark" that is "**likely to cause confusion**."); and 15 U.S.C. §1125(a)(1)(A) (creating a cause of action under the Lanham Act for use of "any word, term, name, symbol, or device, or any combination thereof" that "**is likely to cause confusion**.").   In any event, the statement is clear enough, the Defendants claim an exclusive right to use "Tea Party" or any names that are confusingly similar thereto, thus confirming the allegations in Plaintiffs'' Amended Complaint, and rendering the Defendants' Rule 11 motions toothless.

## MEMORANDUM OF LAW

"[T]he burden of proof as to whether the signer has violated Rule 11 is on the Rule 11 movant," in this case the Defendants.  See McMahan v. Securities Co. L.P. v. FB Foods, Inc., 2006 WL 2092643 *2 (M.Dist.Fla.2006).   "All doubts regarding whether Rule 11 has been violated should be resolved in favor of the signer of the paper," here, in Plaintiffs' favor.  Id.

Defendants cite Thomas v. Early County, GA, 2010 WL 27970 (11th Cir. 2010) for the general proposition that:

> Rule 11 prohibits three types of conduct: filing a pleading that has no reasonable factual basis; filing a pleading based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change the law; and filing a pleading in bad faith or for an improper purpose.
>
> In this circuit, a court confronted with a motion for Rule 11 sanctions first determines whether the party's claims are objectively frivolous-in view of the facts or law-and then, if they are, whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound.

(D.E. 29, pp. 8-9).

Besides accurately quoting an unpublished opinion of the Eleventh Circuit,[1] the Defendants provide no support for their Motion, and fail to meet their burden.  Instead of supporting their Rule 11 Motion with anything that might demonstrate bad faith, the Defendants have essentially summarized and reargued their unresolved Motion to Dismiss (which the Plaintiffs have opposed) and their already denied Motion for Summary Judgment.  This is not the purpose of a Rule 11 Motion.  See McMahan, 2006 WL 2092643 *3 ("A Rule 11 motion is not a means to emphasize or educate with respect to the merits of one's position.  Nor should it serve as a substitute for more appropriate pleadings." (internal citations omitted)).

Irrespective of Defendants' failure to address, much less meet, its burden as the movant, Plaintiffs address each of the Defendants' assertions as follow:

## No Improper Purpose Under Rule 11(b)(1)[2]

With no support for their Motion, citing no case law demonstrating when it may be appropriate to sanction a party under Rule 11(b)(1), and without attaching a single document to buttress the allegations in their Motion, Defendants insist that this Court sanction Plaintiffs Wilkinson and McClellan for allegedly bringing this action for improper purpose.  (D.E. 29).  The justification?  The Defendants tell the tale of how Defendants Egoroff and Guetzloe were "kicked out" of the Republican Party by Jim Greer (Mr. Greer is not a party to this action), of how the Defendants opposed the Florida legislature's decision to accept federal stimulus money to fund a commuter rail project known as "SunRail" (an issue never mentioned in the original Complaint or the Amended Complaint), and that Defendants Wilkinson and McClellan

---

[1] Eleventh Circuit Rule 36-2 indicates that unpublished opinions such as the Thomas decision are not binding precedent.
[2] Only Defendants' Motion for Sanctions against Plaintiffs Wilkinson and McClellan (D.E. 29) includes any claim or argument concerning improper purpose under Rule 11(b)(1).  The Rule 11 Motions against the remaining Plaintiffs include no such allegations.

publically supported the SunRail project (if true, undoubtedly well within their rights to do so). (D.E.29, pp. 2-5).  From these allegations, the Defendants wish to persuade the Court to draw the unwarranted conclusion that the Plaintiffs filed suit against the Defendants for improper purpose. This is simply preposterous.

As has already been pointed out in response to Defendants' Motion to Dismiss, the Defendants, by and through attorney Frederic O'Neal, made demands citing Florida statutes that directly and indirectly put the Plaintiffs in a state of uncertainty as to their rights and obligations, and placed them in fear of litigation.  These threats were sufficient to give the Plaintiffs standing to seek a declaration of rights concerning their use of the phrase "Tea Party" or other phrases including the phrase "Tea Party."  See Cummins v. State Farm Mutual Auto-Mobile Ins. Co., 323 Fed.Appx. 847 (11th Cir. 2009); and Pudenz v. Littlefuse, Inc., 177 F.3d 1204 (11th Cir. 1999). Specifically, the Defendants demanded that:

- at least one of the Plaintiffs **"stop using 'Florida Tea Party' on your website"** citing to Florida Statute §865.09 as authority for the demand, (D.E. 13, Exhibit C)(emphasis added);

- at least one of the Plaintiffs **"not 'do business' (e.g. sell T-shirts) under the name 'Florida Tea Party . . . since the name is registered to me."** Id. at Exhibit D(emphasis added); and

- that Plaintiff The Naples Tea Party **"take a look at whether [you] need[] to get a new name"** because **"[l]ike it or not, the 'Tea Party' of the State of Florida" is entitled to protection under Fla.Stat. §103.081**, and that **"until the law is changed, I suggest obeying it."** (D.E. 11, p. 16).

In fact, the Defendants went so far as to point out that "statute says that you can use the name of a registered political party in connection with your group if you have permission . . . **I wouldn't hold my breath waiting for that permission to come any time soon**." Id.  The Defendants have admitted that they believe that no group may use the term "Tea Party" without the Defendants' permission, and that such permission will not be granted. Id.  Taken together with the fact that such communications were sent by an attorney, that said attorney has cited Florida

statutes as support for the position, and that the communications include not-so-veiled threats such as "until the law is changed, I suggest obeying it," it is beyond credibility for the Defendants to claim that Plaintiffs are unjustified in bringing a declaratory judgment action seeking a judicial determination that the Plaintiffs are not in violation of the law for their use of the phrase "Tea Party."

Thus, Defendants' Motion for sanctions under Rule 11(b)(1) must fail.

<u>Plaintiffs' Claims Are Warranted By Existing Law</u>

Once again, Defendants' as the movants bear the burden of establishing that Plaintiffs have violated the requirements of Rule 11. See McMahan, 2006 WL 2092643 *2. However, they offer no case law to support their position that Plaintiffs' claims are not warranted by existing law. Instead, the Defendants' Motion seeks to place the burden on the Plaintiffs. This is simply not warranted. Id. In any event, Plaintiffs have provided support for their claims in response to Defendants' Motion to Dismiss. For example:

- Plaintiffs cited Pudenz v. Littlefuse, Inc., 177 F.3d 1204 (11th Cir. 1999), a case invalidating a defendant's trade dress rights under the Lanham Act in a declaratory judgment action commenced after the defendant sent the plaintiff a letter claiming to have "registered" rights. This case provides support Plaintiffs' count for a declaration of non-infringement under the Lanham Act.

- Plaintiffs cite to McCarthy On Trademark and Unfair Competition, §11:45 (4th Ed. 2006) for the proposition that at the cross section of trademark rights and the First Amendment is the Doctrine of Fair Use, and that the Doctrine of Fair Use protects individuals using a particular term, phrase, or symbol from allegations of misuse (i.e. infringement, misappropriation, etc.) when the term, phrase, or symbol is merely descriptive of the goods

6

or services offered and where the alleged trademark has not acquired secondary meaning. Id. This authority provides support for Plaintiffs assertion that they have a First Amendment Right to use the phrase "Tea Party."

- Plaintiffs cite to McCarthy On Trademark and Unfair Competition, §16:4 (4th Ed. 2006) for the proposition that "[t]he cases are legion . . . ownership is governed by priority of use. For such marks, the first to use a designation . . . is the 'owner' and the 'senior user.' These marks are given legal protection against infringement **immediately** upon adoption and use in trade." This provides support for the Plaintiffs' claims that Fla. Stat. §103.081 frustrates the purpose of the Lanham Act, and should be preempted by federal law.

- Defendants claim that Plaintiffs have failed to provide authority to support their claim for false association in light of the fact that Plaintiffs do "not hold a trademark under the Lanham Act can sue under the Lanham Act." However, there is no requirement that Plaintiffs "hold" a trademark registration in order to bring a claim for false association. 15 U.S.C. §1125 prohibits "[a] person [from] on or in connection with any goods or services . . . **us[ing] in commerce any word, term, name** . . . which-- (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." See 15 U.S.C. §1125(a)(1)(A)(emphasis added). The statute does not mention the need to "hold" a trademark registration. Compare 15 U.S.C. §1125(a)(1)(A) to 15 U.S.C. §1114(1)(a) which prohibits "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of **a registered mark**," (emphasis added). Unlike 15 U.S.C. §1114(1)(a), 15 U.S.C. §1125(a)(1)(A) does not mention the need to "hold" a trademark registration because no such need exists. However, even if the Court does not agree, this alone is not sanctionable. See Desisto

College, 718 F.Supp. 906 (losing on the merits is not alone enough to justify Rule 11 sanctions).

- Defendants claim that Plaintiffs have failed to show "that Defendants Guetzloe and Egoroff ever threatened anyone with anything regarding the use of the name 'Tea Party.'" (D.E. 29, p. 7).   However, Plaintiffs Amended Complaint alleges, upon information and belief, that Guetzloe is an organizer or other moving force behind Defendant "Tea Party" and that Egoroff is the communications director for Defendant "Tea Party."   (D.E. 11, ¶¶41, 42, & 61).   It is Plaintiffs' contention that the emails sent by O'Neal were sent not on his behalf, but on behalf of Defendant "Tea Party," of which all individual Defendants including Guetzloe and Egoroff are integral parts.   Thus, it is Plaintiffs' belief, which shall be explored and likely confirmed in discovery, that all Defendants are working jointly to wrongfully monopolize use of the phrase "Tea Party" to the exclusion of the Plaintiffs. See Exhibit A.[3]

- Defendants claim that Plaintiffs have failed to support their claim that "the out-of-state Plaintiffs [have] a legitimate fear . . . of their being sued for violating a Florida statute." (D.E. 29, p. 7).   However, the Defendants' actions with respect to attempting to control the phrase "Tea Party" have not been limited to the state of Florida.   For example, in December of 2009, the Defendants sought to registered their "Tea Party" with the Federal Elections Commission as a national political party.   See Exhibits A.   This was reasonably viewed by the out-of-state Defendants as an attempt by the Defendants to expand their operations and attempted control of the phrase "Tea Party" to a national level.   Id.

---

[3] Exhibit A is a composite exhibit including the Declarations of several of the Plaintiffs.   Given the number of Plaintiffs and their wide spread geographic distribution, undersigned counsel anticipates receiving additional Declarations from the remaining Plaintiffs over the course of several days.   Plaintiffs will supplement this filing with the additional Declarations once they have been gathered.

<u>Sanctions Should Not be Imposed Under Rule 11(b)(3)</u>

Defendants argue that "[a]s detailed in O'Neal and Tea Party's summary judgment motion, there is no evidentiary support for Plaintiffs' central claim . . . ."  (D.E. 29, ¶u).  However, the Court has already denied the Defendants' Motion for Summary Judgment to allow for discovery. (D.E. 32).  Thus, this argument appears to be moot.

In any event, the Plaintiffs have evidence, commensurate with the early procedural posture of this action, to support their claims.  For example, Plaintiffs have produced:

- emails from the Defendants to Plaintiffs demanding that Plaintiffs cease using the phrase "Tea Party;"

- a document entitled "Statement of Organization" which was filed by the Defendants in an attempt create a national party evidencing the Defendants' intention to expand their attempts to control the phrase "Tea Party" throughout the U.S. and not only in Florida; and

- Declarations of a number of the Plaintiffs.

Finally, the Defendants argue that the Plaintiffs somehow committed "fraud" on the Court when they submitted an excerpt of an email from the Defendants to Barry Willoughby and Plaintiff Naples Tea Party.  (D.E. 29).  The crux of the fraud argument, as set out in greater detail in the Defendants' already denied Motion for Summary Judgment, is that the Plaintiffs omitted portions of the email.  However, there is no allegation that the excerpt from the email was not a true and correct quotation.  In fact, a review of the documents submitted along with Defendants' Motion for Summary Judgment, which Defendants purport to be the entire email and the accompanying string of responses, does not appear to contradict or otherwise change the message in the allegedly fraudulent excerpt submitted with the Amended Complaint.

The excerpt is reproduced as follows:

> I suggest you take a look at whether your Naples Tea Party needs to get a new name. Specifically, take a look at the first sentence of sub-section (2) of Section 103.081 ("Use of party name; political advertising"), Florida Statutes. It says: "(2) No person or group of persons shall use the name, abbreviation, or symbol of any political party, the name abbreviation, or symbol of which is filed with the Department of State, in connection with any club, group, association, or organization of any kind unless approval and permission have been given in writing by the state executive committee of such party."
>
> Like it or not, the "Tea Party" of the State of Florida, a registered political party, is entitled to the same protection under the law as the Republican Party or the Democratic Party. And don't complain to me. I didn't write the law. The legislature did. So, if you have a problem with it, take it up with them, not me. But, until the law is changed, I suggest obeying it.
>
> Oh, I missed two things. One, there is an exemption under that statute for groups that have been existence for more than 10 years? Has the "Naples Tea Party" been in existence for more than 10 years? Two, as the statute says you can use the name of a registered political party in connection with your group if you have permission from the state executive committee. Barry, if I were you, I wouldn't hold my breath waiting for that permission to come any time soon.

(D.E. 11, p. 16)

The message in this email is clear, the Defendants believe that "Naples Tea Party needs to get a new name" because of the Defendants' alleged rights under Fla.Stat. §103.081. Nothing in the email string provided by the Defendants retracts or contradicts this assertion. At most, the final email in the string includes Fred O'Neal apologizing because his "**tone** was too harsh." (D.E. 24, p. 15)(emphasis added). However, no retraction of the **substance** was ever issued. Thus, nothing substantive was omitted, and no fraud was perpetrated.[4]

<u>Additional Argument and Authority in Opposition to Defendants' Rule 11 Motions</u>

In considering Defendants' request for Rule 11 sanctions, the Court should be guided by

---

[4] The excerpt, as submitted with the Complaint and the Amended Complaint, were the only portions of the email and email-string provided to undersigned counsel by the Plaintiffs. Undersigned counsel was not aware that the email had been truncated, and regrets that the excerpt as included in the pleadings appears to be a complete email. However after review of the documents provided by the Defendants, the undersigned believes that nothing substantive was withheld from the Court. The undersigned takes its duty of candor seriously and will inform the Court if additional facts arise concerning this string of emails.

Desisto College, Inc. v. The Town of Howey in the Hills, 718 F.Supp. 906 (M.D.Fla. 1989).[5]  In

the Desisto College case, even when the court found that "th[e] case was unreasonable," awarded

fees to a prevailing defendant under a standard similar to that of the "exceptional" case standard

set forth in the Lanham Act, and found that "plaintiff's counsel was not candid with the court,"

the court therein still denied defendant's request for Rule 11 sanctions.  Id. at 924 (attorney fees

awarded to prevailing defendant under 42 U.S.C. §1988).  If sanctions were not appropriate in

the Desisto College case, they certainly should not be appropriate in the instant dispute.

The Thomas case, the one case cited by the Defendants, is easily distinguishable from the

instant dispute and a close reading thereof as compared with the Desisto College case supports

the Plaintiffs' position.

In the Thomas case the plaintiffs filed a complaint against a county government and

several individual employees of the county in their individual capacities.  Thomas, 2010 WL

27970 *1.  After the defendants moved to dismiss, the plaintiffs "acknowledged the validity of

certain arguments which were raised by defendants' motion and sought leave to amend their

complaint."  Id.  Upon filing of the Amended Complaint, Defendants again moved to dismiss.

Id.  The Defendants were successful on their second motion to dismiss as the Plaintiffs conceded

dismissal of at least two of their five counts, and the court also ordered the plaintiffs to file a

more definite statement as to the other three counts within twenty days.  Id.  After failing to meet

the twenty day deadline, the court granted plaintiffs' motion to file a Second Amended

Complaint beyond the deadline previously set by the court.  Id.  The defendants then answered

and moved for summary judgment.  Id. at *2.  In addition to presenting legal defenses to the

---

[5] The Eleventh Circuit declined to follow the holding in Desisto College that private process server fees are not a taxable cost which a prevailing party may recover.  See U.S. E.E.O.C. v. W & O, Inc., 213 F.3d 600, 623-24 (11th Cir. 2000).  However, the remainder of the opinion remains good law.  As the issue of taxable costs is not presently before the Court, the Eleventh Circuit's treatment of this portion of the opinion should have no impact on the current dispute.

plaintiffs' claims, the defendants presented undisputed facts (supported by affidavits and a report conducted by the Georgia Bureau of Investigation) essentially negating plaintiffs' claims.  Id. Rather than present their own evidence, the Plaintiffs did not oppose the motion for summary judgment and sought voluntary dismissal.  Id.

In imposing Rule 11 sanctions, the circuit court noted that the claims against the county, which were not only included in the original complaint, but also in the first amended complaint, were futile when plead.  Thus, the defendants incurred fees in bringing two motions to dismiss futile claims.  Further, the additional "defendants incurred fees and costs in continuing to litigate, through three complaints, almost four years and filing of a [successful] summary judgment motion, [against] claims that plaintiffs ha[d] not supported with any evidence."  Id. at *4.

The facts of Thomas case are easily distinguishable from the instant dispute.  For one, the plaintiffs in Thomas filed three complaints and three times withdrew the complaints when presented with the defendants' arguments as to the futility of the complaints.  There has been no such withdrawal of complaints in the instant dispute.[6]  The Defendants in the Thomas case essentially succeeded on summary judgment, whereas the Defendants herein have already moved for and been denied summary judgment.  (D.E. 32).  Lastly, the defendants in the Thomas case were forced to endure nearly four years of litigation during which time the plaintiffs were unable to produce any evidence to support their claims.  However, the instant dispute has only been pending for approximately five (5) months, a mere fraction of the time that Thomas was

---

[6] Although the Plaintiffs did file an Amended Complaint after the Defendants moved to dismiss the original Complaint, the Plaintiffs herein did not do so out of any belief that the original Complaint was legally insufficient as happened in the Thomas case.  Rather, as is clear from a comparison of the original Complaint and the Amended Complaint, the Amended Complaint was filed after the undersigned discovered that additional Plaintiffs had a reasonable fear or apprehension of litigation due to Defendants' threats, and in order to plead additional claims without withdrawing the original claims.

litigated, and the Plaintiffs have already produced evidence in support of their position (described above).

Comparing the Desisto College and Thomas cases, the Court should conclude that sanctions are not appropriate against the Plaintiffs in this action, and should deny Defendants' Motions.

To the extent that the Defendants may not have directly threatened each and every Plaintiff with litigation based on their respective use of "Tea Party," this alone should not be sufficient to justify sanctions against the Plaintiffs and/or their counsel.   The Defendants have already effectively admitted that, prior to the filing of the Amended Complaint, they attempted to inform as many people using the phrase "Tea Party" as they could that they object to the use of any name that is "confusingly similar" to their "Tea Party" name.   (D.E. 29, p. 5).   This astonishing admission alone should be enough to defeat both Defendants' Motion to Dismiss and their Motion under Rule 11.

In any event, at least Plaintiffs Naples Tea Party, South Florida Tea Party, Inc., and Wilkinson have received correspondence from the Defendants asserting rights to the phrase "Tea Party" (or similar phrases including "Tea Party") and have demanded that the Plaintiffs cease use of the same.  (D.E. 11).  Thus, at the very least, the claims of these three Plaintiffs should survive.  The addition of the remaining Plaintiffs has not in any way prejudiced the Defendants. For example, all motions and pleadings thus far filed, and discovery propounded by the Plaintiffs have been joint in nature, thus, the Defendants have had no need to respond separately to different Plaintiffs.  Additionally, and perhaps more importantly given that the Defendants, as the movants, bear the burden, the Defendants have not shown how the inclusion of the additional parties has in any way burdened them such that sanctions would be justified.

Finally, Rule 11 sanctions are not appropriate as undersigned counsel conducted a reasonable investigation prior to filing both the original Complaint and the Amended Complaint. For example, the undersigned counsel was provided with emails and/or excerpts of emails wherein the Defendants made legal claim to having exclusive rights in and to "Tea Party" or other phrases including "Tea Party," counsel reviewed such documents, reviewed articles on the Internet discussing the grassroots Tea Party movement, and communicated with the Plaintiffs (by telephone and email) regarding their use of "Tea Party" and their apprehension of litigation over the same.  In any event, Plaintiffs prior investigation of the claims is only relevant in the event that the claims asserted by the Plaintiffs are frivolous, which they are not.

<u>Defendants Are Not Entitled to Attorneys' Fees</u>

In the unlikely event that the Court concludes that sanctions are appropriate, Defendants should not be awarded recovery of attorneys' fees.

Although the Defendants' Motion does not specifically state what precise relief they seek, the one case cited by the Defendants, the <u>Thomas</u> case, allowed the movants to "recover attorney's fees and costs pursuant to Rule 11."  Presumably, Defendants herein seek the same. However, they are not entitled to an award of attorneys' fees.  <u>Massengale v. Ray</u>, 267 F.3d 1298 (11th Cir. 2001)(even when a *pro se* litigant is himself an attorney, *pro se* litigants may not "recover" attorneys' fees under Rule 11).  The individual Defendants have at all times been acting in a *pro se* capacity.  Likewise, Defendant "Tea Party" has been represented by Frederic B. O'Neal "in his official capacity as chairman and sole officer of the Tea Party."  Nowhere has Mr. O'Neal ever asserted that he is acting as attorney for the "Tea Party."  Even if he were acting as attorney for "Tea Party," the Defendants have not indicated that Mr. O'Neal has charged the "Tea Party" any attorneys' fees or otherwise that the "Tea Party" has agreed to pay him any

14

reasonable attorneys' fees.  Where a party has not "incurred attorney's fees as an expense," recovery of attorneys' fees should be prohibited.  <u>Massengale</u>, 267 F.3d at 1302-03.  Thus, "recovery" of attorneys' fees is simply not available to the Defendants.

### PLAINTIFFS SHOULD BE ENTITLED TO FEES AS THE PREVAILING PARTY

Rule 11(c)(2) states that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."  In the event that the Court denies the Defendants' three (3) separate Motions for sanctions, the Plaintiffs should be entitled to recovery of their attorneys' fees reasonably incurred defending these motions.

Plaintiffs will file, on the Court's instructions, affidavits of their reasonable fees associated with opposing Defendants' Rule 11 Motions.  Plaintiffs are not seeking to unreasonably burden the Defendants with an excessive fee request, and have consolidated their responses to the three (3) separate motions into a single response in order to minimize fees.

### CONCLUSION

Plaintiffs assert that their claims are not objectively frivolous, that the claims are supported by reasonable evidence given the early procedural posture of the action, that the claims were not brought for improper purpose, that the undersigned conducted a reasonable pre-suit investigation, and that given the above, Defendants Motions for sanctions pursuant to Rule 11 should be denied.

Dated May 20, 2010                          Respectfully Submitted,

                                  By:      /s/ FRANK HERRERA
                                           Frank Herrera
                                           Florida Bar No. 494801
                                           Email: fherrera@qpwblaw.com
                                           Gustavo Sardiña
                                           Florida Bar No. 31162
                                           Email: gsardina@qpwblaw.com
                                           QUINTAIROS, PRIETO, WOOD & BOYER
                                           9300 S. Dadeland Blvd.,
                                           Fourth Floor
                                           Miami, Florida 33156
                                           Telephone: 305-670-1101
                                           Facsimile: 305-670-1161
                                  And
                                           Timothy Lucero, Esq.
                                           LUCERO LAW GROUP
                                           10693 Wiles Road, Suite 159
                                           Coral Springs, Florida 33076
                                           Tel.: (954) 592-5277
                                           Email: attorneytimothylucero@yahoo.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof is being filed via the Court's CM/ECF online filing system, and that the same is being served on the Defendants, namely:

The Tea Party and
Frederic B. O'Neal, Esq.
P.O. Box 842
Windermere, Florida 34786

Nicholas Egoroff
5402 Andover Drive
Orlando, Florida 32812

Douglas Guetzloe
P.O. Box 531101
Orlando, Florida 32853

via U.S. Mail this 20th day of May, 2010.

                          By: _s/GUSTAVO SARDIÑA___
                                  Gustavo Sardiña

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA**

SOUTH FLORIDA TEA PARTY, INC.,
A Florida non-profit corporation, et al.,

        Plaintiffs,

v.                           CASE NO.: 10-80062-CV-MARRA/JOHNSON

TEA PARTY, et al.

        Defendants.

_____/

## DECLARATION OF CYNTHIA LUCAS

I, Cynthia Lucas, hereby declare as follows:

1.     I am over the age of 18 and submit this Declaration freely and for all purposes permitted by law. I have personal knowledge of the facts set forth below and can and would testify to the matters set forth in this Declaration.

2.     I am a resident of the State of Florida, and am the organizer of Martin 9/12 Tea Party Committee, a Plaintiff in this action.

3.     I, through Martin 9/12 Tea Party Committee, use the phrase "Tea Party" in Florida in connection with my involvement in a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

4.     It is my understanding that Fred O'Neal, Douglas Guetzloe, and Nicholas Egoroff have acted together to form a minor political party in the State of Florida under the name "Tea Party." It is my understanding that Fred O'Neal is a licensed Florida attorney, is the attorney for and the chairman of the "Tea Party" and that Douglas Guetzloe and Nicholas Egoroff are officers

1

of the "Tea Party" or otherwise operatives thereof working in active concert with O'Neal and "Tea Party."

5.　For example, in a lawsuit, of which I recently became aware, filed by Guetzloe against other individuals involved in the Tea Party movement, Guetzloe states that "Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party."

6.　Also, on page 2 of docket entry 29 of the instant dispute, the Defendants assert that "Egoroff and Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party," thus confirming their joint efforts.

7.　Further, Guetzloe identified himself as co-founder of "Tea Party" on a recent Internet podcast found at: http://strangeradio.podomatic.com/entry/2010-01-09T18_38_56-08_00.

8.　It is my understanding that the Defendants, by and through O'Neal, have sent emails to others who are similarly situated, namely to individuals and organizations using the phrase "tea party" in connection with a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

9.　I am aware that at least Everett Wilkinson of the South Florida Tea Party, Inc. and Barry Willoughby of the Naples Tea Party have received such threatening emails from the Defendants.

10.　These emails, once circulated, put me in imminent fear of litigation concerning the instant dispute over my use of the phrase "tea party."

11.　This belief is reinforced by the Defendants' bold assertion in their sworn Motion for Summary Judgment that they "intend to pursue Plaintiff Wilkinson over his continued public

2

description of himself as the 'chairman of the Florida Tea Party' without use of the qualifier or postscript 'LLC,'" and that they "intend to file a criminal complaint against Plaintiff Wilkinson" relating to the same.

12.    This threat, in a sworn motion before the Court, although not directed at me or my organization specifically, makes clear in my mind that the Defendants intend to pursue all legal avenues, frivolous or otherwise, to monopolize use of the phrase "tea party."

13.    Also, it is my understanding that the Defendants are relying on Florida Statutes to support their position that they control the phrase "Tea Party."

14.    Further, I am uncertain whether my use of "Tea Party" is lawful in Florida or any other State in light of Defendants' reliance on a Florida Statute that would require me to seek the permission of the Defendants to use "Tea Party."

15.    In light of the above, and regardless of the Defendants' true intentions (that is whether they actually intended to sue or whether they were simply making empty threats to those who were similarly situated), I would like a judicial determination that my use of the phrase "tea party" in connection with my in connection with my involvement in a grassroots political movement is lawful.

16.    As I am a Florida resident and use the term "tea party" in Florida in connection with my grassroots political activities I believe that, absent initiation of the instant law suit, the Defendants would have continued to use the threat of litigation in an attempt to monopolize use of the phrase "tea party" and other phrases similar to it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May _14_, 2010

_Cynthia Lucas_
Cynthia Lucas

3

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

SOUTH FLORIDA TEA PARTY, INC.,
A Florida non-profit corporation, et al.,

      Plaintiffs,

v.                         CASE NO.: 10-80062-CV-MARRA/JOHNSON

TEA PARTY, et al.

      Defendants.
_____/

## DECLARATION OF DAVID VON GUNTEN

I, David Von Gunten, hereby declare as follows:

1.    I am over the age of 18 and submit this Declaration freely and for all purposes permitted by law. I have personal knowledge of the facts set forth below and can and would testify to the matters set forth in this Declaration.

2.    I am a resident of the State of Florida, and am the co-founder of North Lake Tea Party, a Plaintiff in this action. Both the North Lake Tea Party and I (individually) are Plaintiffs in this action.

3.    I use the phrase "Tea Party" in Florida in connection with my involvement in a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

4.    It is my understanding that Fred O'Neal, Douglas Guetzloe, and Nicholas Egoroff have acted together to form a minor political party in the State of Florida under the name "Tea Party." It is my understanding that Fred O'Neal is a licensed Florida attorney, is the attorney for and the chairman of the "Tea Party" and that Douglas Guetzloe and Nicholas Egoroff are officers

1

of the "Tea Party" or otherwise operatives thereof working in active concert with O'Neal and "Tea Party."

5.      For example, in a lawsuit, of which I recently became aware, filed by Guetzloe against other individuals involved in the Tea Party movement, Guetzloe states that "Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party."

6.      Also, on page 2 of docket entry 29 of the instant dispute, the Defendants assert that "Egoroff and Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party," thus confirming their joint efforts.

7.      Further, Guetzloe identified himself as co-founder of "Tea Party" on a recent Internet podcast found at: http://strangeradio.podomatic.com/entry/2010-01-09T18_38_56-08_00.

8.      It is my understanding that the Defendants, by and through O'Neal, have sent emails to others who are similarly situated, namely to individuals and organizations using the phrase "tea party" in connection with a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

9.      I am aware that at least Everett Wilkinson of the South Florida Tea Party, Inc. and Barry Willoughby of the Naples Tea Party have received such threatening emails from the Defendants.

10.     These emails, once circulated, put me in imminent fear of litigation concerning the instant dispute over my use of the phrase "tea party."

11.     This belief is reinforced by the Defendants' bold assertion in their sworn Motion for Summary Judgment that they "intend to pursue Plaintiff Wilkinson over his continued public

2

description of himself as the 'chairman of the Florida Tea Party' without use of the qualifier or postscript 'LLC,'" and that they "intend to file a criminal complaint against Plaintiff Wilkinson" relating to the same.

12.     This threat, in a sworn motion before the Court, although not directed at me or my organization specifically, makes clear in my mind that the Defendants intend to pursue all legal avenues, frivolous or otherwise, to monopolize use of the phrase "tea party."

13.     Also, it is my understanding that the Defendants are relying on Florida Statutes to support their position that they control the phrase "Tea Party."

14.     Further, I am uncertain whether my use of "Tea Party" is lawful in Florida or any other State in light of Defendants' reliance on a Florida Statute that would require me to seek the permission of the Defendants to use "Tea Party."

15.     In light of the above, and regardless of the Defendants' true intentions (that is whether they actually intended to sue or whether they were simply making empty threats to those who were similarly situated), I would like a judicial determination that my use of the phrase "tea party" in connection with my in connection with my involvement in a grassroots political movement is lawful.

16.     As I am a Florida resident and use the term "tea party" in Florida in connection with my grassroots political activities I believe that, absent initiation of the instant law suit, the Defendants would have continued to use the threat of litigation in an attempt to monopolize use of the phrase "tea party" and other phrases similar to it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 19, 2010

David Von Gunten

3

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

SOUTH FLORIDA TEA PARTY, INC.,
A Florida non-profit corporation, et al.,

        Plaintiffs,

v.                            CASE NO.: 10-80062-CV-MARRA/JOHNSON

TEA PARTY, et al.

        Defendants.

_____/

### DECLARATION OF MARYBETH ERDMANN

I, MaryBeth Erdmann, hereby declare as follows:

1. I am over the age of 18 and submit this Declaration freely and for all purposes permitted by law. I have personal knowledge of the facts set forth below and can and would testify to the matters set forth in this Declaration.

2. I, through my Port Huron Tea Party, use the phrase "Tea Party" in connection with my involvement in a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

3. It is my understanding that Fred O'Neal, Douglas Guetzloe, and Nicholas Egoroff have acted together to form a minor political party in the State of Florida under the name "Tea Party." It is my understanding that Fred O'Neal is the attorney for and the chairman of the "Tea Party" and that Douglas Guetzloe and Nicholas Egoroff are officers of the "Tea Party" or otherwise operatives thereof working in active concert with O'Neal and "Tea Party."

4. For example, in a lawsuit, of which I recently became aware, filed by Guetzloe against other individuals involved in the Tea Party movement, Guetzloe states that "Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party."

5. Also, on page 2 of docket entry 29 of the instant dispute, the Defendants assert that "Egoroff and Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party," thus confirming their joint

efforts.

6.  Further, Guetzloe identified himself as co-founder of "Tea Party" on a recent Internet podcast found at: http://strangeradio.podomatic.com/entry/2010-01-09T18_38_56-08_00.

7.  It is my understanding that the Defendants, by and through O'Neal, have sent emails to others who are similarly situated, namely to individuals and organizations using the phrase "tea party" in connection with a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

8.  I am aware that at least Everett Wilkinson of the South Florida Tea Party, Inc. and Barry Willoughby of the Naples Tea Party have received such threatening emails from the Defendants.

9.  These emails, once circulated, put me in imminent fear of litigation concerning the instant dispute over my use of the phrase "tea party."

10. This belief is reinforced by the Defendants' bold assertion in their sworn Motion for Summary Judgment that they "intend to pursue Plaintiff Wilkinson over his continued public description of himself as the 'chairman of the Florida Tea Party' without use of the qualifier or postscript 'LLC,'" and that they "intend to file a criminal complaint against Plaintiff Wilkinson" relating to the same.

11. This threat, in a sworn motion before the Court, although not directed at me or my organization specifically, makes clear in my mind that the Defendants intend to pursue all legal avenues, frivolous or otherwise, to monopolize use of the phrase "tea party."

12. I do not believe that the Defendants' overreaching and attempts to monopolize the phrase "tea party" are limited to the State of Florida.

13. For example, it is my understanding that the Defendants have attempted to create a national "Tea Party" and have filed documents with the Federal Elections Commission in furtherance of this aim. See Exhibit A attached hereto. Thus, I believed at the time that the instant action was commenced that the Defendants would pursue legal action against me for my use of the phrase "tea party."

14. Further, I am uncertain whether my use of "Tea Party" is lawful in Florida or any other State in light of Defendants' reliance on a Florida Statute that would require me to seek the permission of the Defendants to

use "Tea Party."

15. In light of the above, and regardless of the Defendants' true intentions (that is whether they actually intended to sue or whether they were simply making empty threats to those who were similarly situated), I would like a judicial determination that my use of the phrase "tea party" in connection with my in connection with my involvement in a grassroots political movement is lawful.

16. Based on the above I believe that, absent initiation of the instant law suit, the Defendants would have continued to use the threat of litigation in an attempt to monopolize use of the phrase "tea party" and other phrases similar to it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 17, 2010

MaryBeth Erdmann, President
Port Huron Tea Party
4308 Atkins Rd.
Port Huron, MI 48060

# EXHIBIT A
## TO THE DECLARATION

RECEIVED
FEDERAL ELECTION
COMMISSION

2009 DEC 22 PM 3: 01

OFFICE OF GENERAL
COUNSEL

**Frederic B. O'Neal, Attorney at Law**
**P.O. Box 842**
**Windermere, FL 34786**
**telephone (407) 719-6796**
**FAX (407)292-5368**
**fredonealatlaw@aol.com**

Date: December 9, 2009
To:  Federal Elections Commission
    999 E Street, N.W.
    Washington, DC 20463
From: Fred O'Neal
Re: Statement of Organization for the Tea Party
Enclosures: - same

_____

Dear Sirs:

Enclosed for filing please find the Statement of Organization for the Tea Party, a national political party.

If you should have any questions, please don't hesitate to contact me.

                    Sincerely,

                    Frederic B. O'Neal, Esq.

| FEC FORM 1 | **STATEMENT OF ORGANIZATION** |  RECEIVED FEDERAL ELECTION COMMISSION DISCLOSURE Office Use Only |
|---|---|---|

**1. NAME OF COMMITTEE (in full)**   (Check if name is changed)   Example: If typing, type over the lines.   12FE4M 2009 DEC 28 P 12: 14

TEA PARTY

**ADDRESS (number and street)**   7798 SNOWBERRY CIRCLE

(Check if address is changed)

ORLANDO   FL   32819-3103

CITY   STATE   ZIP CODE

**COMMITTEE'S E-MAIL ADDRESS (Please provide only one e-mail address)**

(Check if address is changed)   FRED@FLORIDATEAPARTY.COM

**COMMITTEE'S WEB PAGE ADDRESS (URL)**

(Check if address is changed)   WWW.FLORIDATEAPARTY.COM

**2. DATE**   M M / D D / Y Y Y Y   12 09 2009

**3. FEC IDENTIFICATION NUMBER**   C

**4. IS THIS STATEMENT**   X   NEW (N)   **OR**   AMENDED (A)

*I certify that I have examined this Statement and to the best of my knowledge and belief it is true, correct and complete.*

Type or Print Name of Treasurer   FREDERIC BENNETT O'NEAL

Signature of Treasurer   _____   Date   12 09 2009

NOTE: Submission of false, erroneous, or incomplete information may subject the person signing this Statement to the penalties of 2 U.S.C. §437g.
**ANY CHANGE IN INFORMATION SHOULD BE REPORTED WITHIN 10 DAYS.**

| Office Use Only | | | | For further information contact: Federal Election Commission Toll Free 800-424-9530 Local 202-694-1100 | **FEC FORM 1** (Revised 02/2009) |
|---|---|---|---|---|---|

29030202917

FEC Form 1 (Revised 02/2009)                                                                                          Page **2**

## 5. TYPE OF COMMITTEE
### Candidate Committee:

(a)         This committee is a principal campaign committee. (Complete the candidate information below.)

(b)         This committee is an authorized committee, and is NOT a principal campaign committee. (Complete the candidate information below.)

Name of
Candidate | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| Candidate Party Affiliation | Office Sought: | House | Senate | President | State |
|---|---|---|---|---|---|
| | | | | | District |

(c)         This committee supports/opposes only one candidate, and is NOT an authorized committee.

Name of
Candidate | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

### Party Committee:

(d)    **X**    This committee is a  *N A T*   (National, State or subordinate) committee of the   *T E A*   (Democratic, Republican, etc.) Party.

### Political Action Committee (PAC):

(e)         This committee is a separate segregated fund. (Identify connected organization on line 6.) Its connected organization is a:

|  | Corporation |  | Corporation w/o Capital Stock |  | Labor Organization |
|---|---|---|---|---|---|
|  | Membership Organization |  | Trade Association |  | Cooperative |

In addition, this committee is a Lobbyist/Registrant PAC.

(f)         This committee supports/opposes more than one Federal candidate, and is NOT a separate segregated fund or party committee. (i.e., nonconnected committee)

In addition, this committee is a Lobbyist/Registrant PAC.

In addition, this committee is a Leadership PAC. (Identify sponsor on line 6.)

## Joint Fundraising Representative:

(g)         This committee collects contributions, pays fundraising expenses and disburses net proceeds for two or more political committees/organizations, at least one of which is an authorized committee of a federal candidate.

(h)         *This committee collects contributions, pays fundraising expenses and disburses net proceeds for two or more political committees/organizations, none of which is an authorized committee of a federal candidate.*

Committees Participating in Joint Fundraiser

1.    | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

2.    | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

3.    | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

4.    | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

29030202918

FEC **Form 1** (Revised 02/2009)                                                                Page **3**

Write or Type Committee Name

---

6.  **Name of Any Connected Organization, Affiliated Committee, Joint Fundraising Representative, or Leadership PAC Sponsor**

Mailing Address

CITY                    STATE            ZIP CODE

Relationship:     Connected Organization     Affiliated Committee     Joint Fundraising Representative     Leadership PAC Sponsor

---

7.  **Custodian of Records:** Identify by name, address (phone number -- optional) and position of the person in possession of committee books and records.

Full Name          F R E D E R I C K   B E N N E T T   O ' N E A L

Mailing Address     P . O .  B O X  8 4 2

                    W I N D E R M E R E              F L    3 4 7 8 6 - 0 8 4 2

Title or Position                              CITY                    STATE            ZIP CODE

C H A I R M A N                        Telephone number    4 0 7 - 7 1 9 - 6 9 9 6

---

8.  **Treasurer:** List the name and address (phone number -- optional) of the treasurer of the committee; and the name and address of any designated agent (e.g., assistant treasurer).

Full Name
of Treasurer        F R E D E R I C K   B E N N E T T   O ' N E A L

Mailing Address     P . O .  B O X  8 4 2

                    W I N D E R M E R G              F L    3 4 7 8 6 - 0 8 4 2

Title or Position                              CITY                    STATE            ZIP CODE

T R E A S U R E R                     Telephone number    4 0 7 - 7 1 9 - 6 9 9 6

FEC **Form 1** (Revised 02/2009)          Page 4

| Full Name of Designated Agent | FREDERIC BENNETT O'NEAL |
|---|---|

Mailing Address    P. O. BOX 942

WINDERMERE    FL    34786-0942

CITY    STATE    ZIP CODE

Title or Position    CHAIRMAN

Telephone number    407-719-6796

9. **Banks or Other Depositories:** List all banks or other depositories in which the committee deposits funds, holds accounts, rents safety deposit boxes or maintains funds.

Name of Bank, Depository, etc.

BANK OF AMERICA, N.A.

Mailing Address    750 SOUTH ORLANDO AVENUE

WINTER PARK    FL    32789-

CITY    STATE    ZIP CODE

Name of Bank, Depository, etc.

Mailing Address

CITY    STATE    ZIP CODE

29030202920

Federal Election Commission
**ENVELOPE REPLACEMENT PAGE FOR INCOMING DOCUMENTS**
The FEC added this page to the end of this filing to indicate how it was received.

| | | Date of Receipt |
|---|---|---|
| ☐ | Hand Delivered | |
| ☑ | USPS First Class Mail | Postmarked |
| ☐ | USPS Registered/Certified | Postmarked (R/C) |
| ☐ | USPS Priority Mail | Postmarked |
| | Delivery Confirmation™ or Signature Confirmation™ Label ☐ | |
| ☐ | USPS Express Mail | Postmarked |
| ☐ | Postmark Illegible | |
| ☑ | No Postmark | |
| ☐ | Overnight Delivery Service (Specify): | Shipping Date |
| | Next Business Day Delivery ☐ | |
| ☐ | Received from House Records & Registration Office | Date of Receipt |
| ☐ | Received from Senate Public Records Office | Date of Receipt |
| ☐ | Received from Electronic Filing Office | Date of Receipt |
| ☐ | Other (Specify): | Date of Receipt or Postmarked |

_(signature)_

PREPARER

12/28/09

DATE PREPARED

(3/2005)

290302921

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA

SOUTH FLORIDA TEA PARTY, INC.,
A Florida non-profit corporation, et al.,

        Plaintiffs,

v.                         CASE NO.:  10-80062-CV-MARRA/JOHNSON

TEA PARTY, et al.

        Defendants.

_____/

## DECLARATION OF LEON HOWARD

I, Leon Howard, hereby declare as follows:

    1.    I am over the age of 18 and submit this Declaration freely and for all purposes permitted by law.  I have personal knowledge of the facts set forth below and can and would testify to the matters set forth in this Declaration.

    2.    I, through my Tri-Cities Tea Party, use the phrase "Tea Party" in connection with my involvement in a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

    3.    It is my understanding that Fred O'Neal, Douglas Guetzloe, and Nicholas Egoroff have acted together to form a minor political party in the State of Florida under the name "Tea Party."  It is my understanding that Fred O'Neal is the attorney for and the chairman of the "Tea Party" and that Douglas Guetzloe and Nicholas Egoroff are officers of the "Tea Party" or otherwise operatives thereof working in active concert with O'Neal and "Tea Party."

1

4.     For example, in a lawsuit, of which I recently became aware, filed by Guetzloe against other individuals involved in the Tea Party movement, Guetzloe states that "Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party."

5.     Also, on page 2 of docket entry 29 of the instant dispute, the Defendants assert that "Egoroff and Guetzloe joined O'Neal in promoting O'Neal's new Tea Party political party," thus confirming their joint efforts.

6.     Further, Guetzloe identified himself as co-founder of "Tea Party" on a recent Internet podcast found at: http://strangeradio.podomatic.com/entry/2010-01-09T18_38_56_08_00

7.     It is my understanding that the Defendants, by and through O'Neal, have sent emails to others who are similarly situated, namely to individuals and organizations using the phrase "tea party" in connection with a grassroots political movement by the same name dedicated to the United States' founding principles of fiscal responsibility, limited government, and free markets.

8.     I am aware that at least Everett Wilkinson of the South Florida Tea Party, Inc. and Barry Willoughby of the Naples Tea Party have received such threatening emails from the Defendants.

9.     These emails, once circulated, put me in imminent fear of litigation concerning the instant dispute over my use of the phrase "tea party."

10.     This belief is reinforced by the Defendants' bold assertion in their sworn Motion for Summary Judgment that they "intend to pursue Plaintiff Wilkinson over his continued public description of himself as the 'chairman of the Florida Tea Party' without use

2

of the qualifier or postscript 'LLC,'" and that they "intend to file a criminal complaint against Plaintiff Wilkinson" relating to the same.

11. This threat, in a sworn motion before the Court, although not directed at me or my organization specifically, makes clear in my mind that the Defendants intend to pursue all legal avenues, frivolous or otherwise, to monopolize use of the phrase "tea party,"

12. I do not believe that the Defendants' overreaching and attempts to monopolize the phrase "tea party" are limited to the State of Florida.

13. For example, it is my understanding that the Defendants have attempted to create a national "Tea Party" and have filed documents with the Federal Elections Commission in furtherance of this aim. See Exhibit A attached hereto. Thus, I believed at the time that the instant action was commenced that the Defendants would pursue legal action against me for my use of the phrase "tea party."

14. Further, I am uncertain whether my use of "Tea Party" is lawful in Florida or any other State in light of Defendants' reliance on a Florida Statute that would require me to seek the permission of the Defendants to use "Tea Party,"

15. In light of the above, and regardless of the Defendants' true intentions (that is whether they actually intended to sue or whether they were simply making empty threats to those who were similarly situated), I would like a judicial determination that my use of the phrase "tea party" in connection with my in connection with my involvement in a grassroots political movement is lawful.

16. Based on the above I believe that, absent initiation of the instant law suit, the Defendants would have continued to use the threat of litigation in an attempt to monopolize use of the phrase "tea party" and other phrases similar to it.

3

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 14, 2010

Leon Howard

4

# EXHIBIT A
## TO THE DECLARATION

RECEIVED
FEDERAL ELECTION
COMMISSION

2009 DEC 22  PM 3: 01

**Frederic B. O'Neal, Attorney at Law**
**P.O. Box 842**
**Windermere, FL 34786**
**telephone (407) 719-6796**
**FAX (407)292-5368**
**fredonealatlaw@aol.com**

OFFICE OF GENERAL
COUNSEL

Date: December 9, 2009
To:  Federal Elections Commission
      999 E Street, N.W.
      Washington, DC 20463
From: Fred O'Neal
Re: Statement of Organization for the Tea Party
Enclosures: - same

_____

Dear Sirs:

    Enclosed for filing please find the Statement of Organization for the Tea Party, a national political party.

    If you should have any questions, please don't hesitate to contact me.

                Sincerely,

                Frederic B. O'Neal, Esq.

## FEC FORM 1

# STATEMENT OF ORGANIZATION



Office Use Only

**1. NAME OF COMMITTEE (in full)**   (Check if name is changed)   Example: If typing, type over the lines.

12FE4M    2009 DEC 28   P 12: 14

T E A   P A R T Y

**ADDRESS (number and street)**   7 7 9 8   S N O W B E R R Y   C I R C L E

(Check if address is changed)

O R L A N D O          F L   3 2 8 1 9 - 3 1 0 3

CITY                        STATE        ZIP CODE

**COMMITTEE'S E-MAIL ADDRESS (Please provide only one e-mail address)**

(Check if address is changed)   F R E D @ F L O R I D A T E A P A R T Y . C O M

**COMMITTEE'S WEB PAGE ADDRESS (URL)**

(Check if address is changed)   W W W . F L O R I D A T E A P A R T Y . C O M

**2. DATE**   1 2   0 9   2 0 0 9

**3. FEC IDENTIFICATION NUMBER**   C

**4. IS THIS STATEMENT**   ☒ NEW (N)   **OR**   AMENDED (A)

*I certify that I have examined this Statement and to the best of my knowledge and belief it is true, correct and complete.*

Type or Print Name of Treasurer   FREDERIC BENNETT O'NEAL

Signature of Treasurer   Date   1 2   0 9   2 0 0 9

NOTE: Submission of false, erroneous, or incomplete information may subject the person signing this Statement to the penalties of 2 U.S.C. §437g.

**ANY CHANGE IN INFORMATION SHOULD BE REPORTED WITHIN 10 DAYS.**

| Office Use Only | | | | For further information contact:<br>Federal Election Commission<br>Toll Free 800-424-9530<br>Local 202-694-1100 | **FEC FORM 1**<br>(Revised 02/2009) |

29030202917

FEC Form 1 (Revised 02/2009)                                                                 Page **2**

5.   TYPE OF COMMITTEE
   **Candidate Committee:**

   (a)          This committee is a principal campaign committee. (Complete the candidate information below.)

   (b)          This committee is an authorized committee, and is NOT a principal campaign committee. (Complete the candidate information below.)

   Name of
   Candidate    | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

   | Candidate Party Affiliation | Office Sought: | House | Senate | President | State District |
   |---|---|---|---|---|---|

   (c)          This committee supports/opposes only one candidate, and is NOT an authorized committee.

   Name of
   Candidate    | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

   **Party Committee:**

   (d)   X   This committee is a   *N A T*   (National, State or subordinate) committee of the   *T E A*   (Democratic, Republican, etc.) Party.

   **Political Action Committee (PAC):**

   (e)          This committee is a separate segregated fund. (Identify connected organization on line 6.) Its connected organization is a:

                    Corporation                          Corporation w/o Capital Stock              Labor Organization

                    Membership Organization              Trade Association                          Cooperative

                In addition, this committee is a Lobbyist/Registrant PAC.

   (f)          This committee supports/opposes more than one Federal candidate, and is NOT a separate segregated fund or party committee. (i.e., nonconnected committee)

                In addition, this committee is a Lobbyist/Registrant PAC.

                In addition, this committee is a Leadership PAC. (Identify sponsor on line 6.)

   **Joint Fundraising Representative:**

   (g)          This committee collects contributions, pays fundraising expenses and disburses net proceeds for two or more political committees/organizations, at least one of which is an authorized committee of a federal candidate.

   (h)          *This committee collects contributions, pays fundraising expenses and disburses net proceeds for two or more political committees/organizations, none of which is an authorized committee of a federal candidate.*

   Committees Participating in Joint Fundraiser

   1.   | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

   2.   | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

   3.   | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

   4.   | | | | | | | | | | | | | | | | | | | | | | | | | FEC ID number C

FEC Form 1 (Revised 02/2009)                                                    Page **3**

Write or Type Committee Name

---

6.   **Name of Any Connected Organization, Affiliated Committee, Joint Fundraising Representative, or Leadership PAC Sponsor**

Mailing Address

CITY                                    STATE            ZIP CODE

Relationship:        Connected Organization        Affiliated Committee        Joint Fundraising Representative        Leadership PAC Sponsor

---

7.   **Custodian of Records:** Identify by name, address (phone number -- optional) and position of the person in possession of committee books and records.

Full Name        FREDERIC BENNETT O'NEAL

Mailing Address        P.O. BOX 842

                        WINDERMERE        FL        34786-0842

Title or Position        CITY        STATE        ZIP CODE

CHAIRMAN                        Telephone number    407-719-6996

---

8.   **Treasurer:** List the name and address (phone number -- optional) of the treasurer of the committee; and the name and address of any designated agent (e.g., assistant treasurer).

Full Name
of Treasurer        FREDERIC BENNETT O'NEAL

Mailing Address        P.O. BOX 842

                        WINDERMERG        FL        34786-0842
                        CITY        STATE        ZIP CODE

Title or Position

TREASURER                        Telephone number    407-719-6996

FEC **Form 1** (Revised 02/2009)                                              Page 4

Full Name of
Designated
Agent            FREDERIC BENNETT O'NEAL

Mailing Address   P. O. Box 942

WINDERMERE                    FL    34786 - 0942
                     CITY                        STATE      ZIP CODE

Title or Position
CHAIRMAN                              Telephone number   407 - 719 - 6796

9. **Banks or Other Depositories:** List all banks or other depositories in which the committee deposits funds, holds accounts, rents safety deposit boxes or maintains funds.

Name of Bank, Depository, etc.

                  BANK OF AMERICA, N.A.

Mailing Address   750 SOUTH ORLANDO AVENUE

                  WINTER PARK                    FL    32789 -
                     CITY                        STATE      ZIP CODE

Name of Bank, Depository, etc.

Mailing Address

                                                   ___    _____ - _____
                     CITY                        STATE      ZIP CODE

Federal Election Commission
**ENVELOPE REPLACEMENT PAGE FOR INCOMING DOCUMENTS**
The FEC added this page to the end of this filing to indicate how it was received.

| | | Date of Receipt |
|---|---|---|
| ☐ | Hand Delivered | |

| | | Postmarked |
|---|---|---|
| ☑ | USPS First Class Mail | |

| | | Postmarked (R/C) |
|---|---|---|
| ☐ | USPS Registered/Certified | |

| | | Postmarked |
|---|---|---|
| ☐ | USPS Priority Mail | |
| | Delivery Confirmation™ or Signature Confirmation™ Label ☐ | |

| | | Postmarked |
|---|---|---|
| ☐ | USPS Express Mail | |

| ☐ | Postmark Illegible | |

| ☑ | No Postmark | |

| | | Shipping Date |
|---|---|---|
| ☐ | Overnight Delivery Service (Specify): | |
| | Next Business Day Delivery ☐ | |

| | | Date of Receipt |
|---|---|---|
| ☐ | Received from House Records & Registration Office | |

| | | Date of Receipt |
|---|---|---|
| ☐ | Received from Senate Public Records Office | |

| | | Date of Receipt |
|---|---|---|
| ☐ | Received from Electronic Filing Office | |

| | | Date of Receipt or Postmarked |
|---|---|---|
| ☐ | Other (Specify): | |

PREPARER                                          12/28/09

DATE PREPARED

(3/2005)

29030202921