IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF FLORIDA



SOUTH FLORIDA TEA PARTY, INC.,
et al.,

        Plaintiff(s),

vs.                                 CASE NO. 9:10-CV-80062-MARRA/JOHNSON
                                        (Judge Kenneth A. Marra)

TEA PARTY, et al.,

        Defendant(s).

_____/

## DEFENDANTS, TEA PARTY AND O'NEAL'S
## REPLY TO PLAINTIFFS' RESPONSE (Doc. 35)

Pursuant to Rule 7.1 of the local rules of this Court, Defendant, FREDERIC B. O'NEAL a/k/a "Fred O'Neal," ("Defendant") in his individual capacity and the TEA PARTY, an unincorporated Florida political party, by and through Defendant in his official capacity as its chairman and sole officer, replies to Plaintiffs' Response (Doc. 35), dated May 20, 2010.

In reply thereto, Defendant would show this Court the following:

### Introduction

(a) Plaintiffs' Response mischaracterizes Defendants' Rule 11 motions and, then, responds to something other than what Defendants have asserted. For

1

example, Plaintiffs Response makes the following misstatements about Defendants' position:

- "... Defendants, by and through Frederic O'Neal, an attorney, sent emails to at least some of the Plaintiffs demanding that they stop using the phrase "Tea Party" ..." (Response, page 1). There are no facts (and, after discovery is completed, there will be no facts) showing the Defendants (note: plural) instructed O'Neal to send the emails referred to, nor does the one email sent to a plaintiff in this action complain of that plaintiff's use of the phrase "Tea Party." Rather, it complains of his use of the phrase "Florida Tea Party. Additionally, none of the emails in question contain "demands," nor do they contain "threats of litigation."

- Regarding the comments on page 2 of Plaintiffs' Response, as stated in prior filings with this Court, to the undersigned's knowledge the only person or organization creating confusion in the public's mind with the Defendant Tea Party, a Florida minor political party is Plaintiff Wilkinson's continued description of himself as the chairman of the "Florida Tea Party." As shown by Defendant's Second Request for Judicial Notice, Wilkinson registered a company with the name "Florida Tea Party, LLC." Yet he continually fails to add the abbreviation "LLC" after the phrase "Florida Tea Party," all in an apparent attempt to create confusion between himself and the undersigned and his

"organization" and the Defendant, Tea Party. That is the only "actual controversy" in this whole ginned up lawsuit. And that controversy is between Plaintiff Wilkinson and the State of Florida and will, hopefully, be resolved in the Florida criminal courts, not here.

- "... all Defendants are working jointly to wrongfully monopolize use of the phrase "Tea Party" to the exclusion of the Plaintiffs." (Response, page 8). How many times does it have to be said that no "actual controversy" exists over whether Defendant has a problem with the various plaintiff organizations utilizing the phrase "Tea Party" in their organizational names, provided those names are not so close to that of Defendant Tea Party, a Florida minor political party, as to potentially confuse the public? What sane man thinks there is a possibility that the public will confuse the Waco Tea Party with the Defendant, Tea Party, a Florida minor political party? Had the Waco Tea Party bothered to contact the undersigned Defendant prior to filing the instant lawsuit and ask for permission and approval (though it was not needed since the Waco Tea Party is located in Texas) to use the name Waco Tea Party, Waco Tea Party never would have filed the instant lawsuit and wasted this Court's time. More egregiously, had Mr. Herrera, the Waco Tea Party's <u>attorney,</u> as part of his pre-suit due diligence and investigation, bothered to contact the undersigned Defendant prior to filing suit on behalf of the Waco Tea Party and ask

if there were a problem with use of the name "Waco Tea Party," again, this Court's time never would have been wasted. PUT ANOTHER WAY, THIS IS EXACTLY THE KIND OF LAWSUIT THE RESPONSIBILITIES OUTLINED IN RULE 11 WERE DESIGNED TO PREVENT FROM EVER BEING FILED IN THE FIRST PLACE. At the very least, as part of his due diligence prior to filing the instant lawsuit seeking a declaration of rights, Mr. Herrera should have written the undersigned and requested a statement of Defendant's position on those matters about which he seeks a declaration from the Court. But, instead, there was NO communication with the undersigned from Mr. Herrera prior to his filing the instant lawsuit. A little due diligence by Mr. Herrera prior to filing the instant lawsuit would have saved this Court and the taxpayers who fund the costs of this Court's operation a great deal of time and money.1

- "The Defendants have admitted that they believe no group may use the term "Tea Party" without the Defendants' permission, and that such permission will not be granted." (Response, page 5). Again, how many times has the undersigned Defendant stated in prior filings in this case that the above statement is exactly the opposite of the position of the undersigned? As previously stated, Section 103.081(2) provides for requesting "approval and permission" for the use of the name of a

---

1 As an aside, if the Plaintiffs are really so concerned about the waste of taxpayers' money, why do they engage in wasting the taxpayers' money themselves?

4

registered political party. Did <u>any</u> of the plaintiffs make such a request prior to filing this lawsuit? NO. Did Mr. Herrera, their attorney, as part of his due diligence prior to filing this lawsuit, make such a request on their behalf? NO. Why, then, did Plaintiffs feel they needed to rush into Court seeking unnecessary declaratory relief and wasting this Court's time prior to conducting <u>any</u> due diligence or <u>any</u> pre-suit investigation into whether the undersigned would grant approval and permission for the various plaintiffs' use of the phrase "Tea Party?" Was there an emergency? If so, why was no temporary relief requested in the complaint?

- The undersigned would submit that the reason why Mr. Herrera conducted <u>no</u> due diligence and <u>no</u> pre-suit investigation into determining whether an "actual controversy" existed between Defendant and the various plaintiffs over the use of the phrase "Tea Party" in an organizational name is because resolving such an "actual controversy" was neither his nor Plaintiff Wilkinson and McClellan's motivation for filing the instant lawsuit in the first place. The undersigned would submit that such will be the Court's conclusion after holding an evidentiary hearing into whether the provisions of Rule 11(b)(1) were violated here.

(b) If the Court will indulge the undersigned in a little literary license, the motivations behind filing this action can possibly be illustrated by a story:

- Once upon a time, a certain federal district judge purchased a wood chipper. He did so because he wanted to use the wood chipper for what wood chippers are traditionally are used for. Unfortunately for the judge, there were certain people who wished to harass and discredit the judge. Their names were Everett and Tim. Everett and Tim found out about the judge's purchase of a wood chipper. Both owned kittens. Everett and Tim went to see a public relations representative named Michael. Michael specialized in harassing and discrediting people for his clients through frivolous lawsuits, creating attack websites, flooding the Internet with derogatory emails and blog entries, and feeding reporters with packets of negative information about the intended target. Michael recommended that Everett and Tim hire two attorneys who had been trained in a firm, which offered as one of its "services," the filing of frivolous lawsuits intended to harass and discredit people. Everett, Tim, Michael and their attorneys got together and decided to file a frivolous lawsuit against the judge, claiming that the real reason why the judge bought his wood chipper was to toss Everett and Tim's kittens and all the other kittens in the State of Florida into his chipper. Of course, neither Everett nor Tim nor their attorneys bothered to ask the judge what he intended to do with his chipper. And, of course, also, the judge had never thrown a kitten into his chipper, nor had he ever threatened to do so. After

filing their suit, Michael issued a press release praising Tim and Everett for filing a suit to protect all the kittens in the State of Florida. In his press release, Michael stated that the suit was necessary to prevent the judge from following through on his threat to throw all the kittens in the State of Florida into his chipper. After filing suit, Everett and Tim sent out many emails asking other kitten owners to join their lawsuit in order to stop the judge from throwing kittens into his chipper. Many kitten owners joined in the lawsuit (though, like Everett and Tim, the judge had never threatened to throw their kittens into his chipper). Many kitten owners now hated the judge because of what the lawsuit accused him of doing (that being the desired effect in the first place of the lawsuit). The judge responded to the lawsuit by filing a Rule 11 motion stating that he had never had an intent to throw kittens into his chipper, that he had never threatened to throw Tim or Everett's kittens into his chipper nor the kittens of any of the other plaintiffs, and that, had the plaintiffs or their attorneys bothered to ask him, he would have told them that he had no intention of throwing anyone's kittens into his chipper. In response, Everett and Tim's attorney argued that, though the judge had not actually thrown any of the plaintiffs' kittens into his chipper and though had not actually threatened to throw any of the plaintiffs' kittens into his chipper, the judge's mere possession of a chipper coupled with the fact that he had the ability to throw kittens

      into his chipper created the potential that some day he might throw the plaintiffs' kittens into his chipper. Consequently, the attorney argued that his clients had a "reasonable fear" that the judge might some day do so and that that "reasonable fear" provided a sufficient basis for their filing the suit.

- Clearly the suit against the judge was bogus. The bogus nature of the lawsuit was shown by, among other things, the fact that the attorneys who filed the suit never bothered to even contact the judge to find what his intentions were regarding kittens and his chipper. That lack of due diligence prior to filing tended to show that the motive for the suit against the judge was other than what appeared on paper.

- The above story is essentially what has happened here. Did the undersigned ever threaten to sue McClellan or Wilkinson over their use of the phrase "Tea Party?" NO. Did the undersigned ever threaten to sue any of the other plaintiffs over their use of the phrase "Tea Party" in an organizational name? NO. Has the undersigned ever sued anyone over the use of the phrase "Tea Party" in an organizational name? NO. Did any of the plaintiffs ever bother to ask the undersigned prior to suit being filed whether he intended to sue anyone over the use the phrase "Tea Party?" NO. Did any of the plaintiffs ever bother to ask the undersigned whether he had a problem with their use of the phrase "Tea Party" in their particular organizational names? NO.

- Is this, consequently, a bogus lawsuit based on the bogus premise that the undersigned intends to sue any organization which uses the phrase "Tea Party" in its organizational name? YES. Should Rule 11 sanctions, consequently, be awarded against the plaintiffs and their attorneys? YES.

c) As for the argument on pages 14 and 15 of the Response that Defendants have not "incurred attorney's fees as an expense," as will be shown at an evidentiary hearing on the issue of fees, the Defendant, Tea Party, has "incurred attorney's fees as an expense" by obligating itself to pay the undersigned to defend it and himself and to assist Defendants Egoroff and Guetzloe in their defense.

d) As for providing "proof" of the allegations regarding the motives of Wilkinson and McClellan in filing the instant lawsuit, Defendants are prepared to provide that "proof" at an evidentiary hearing or Defendants can provide that proof by affidavit. However, since some of the "proof" involves testimony (e.g. Punta Gorda Tea Party leader Robin Stublen's testimony that he told Wilkinson <u>prior to the amended complaint being filed</u> of Defendant's position regarding the use of the phrase "Tea Party" in an organizational name and that Wilkinson, in turn, warned Stublen not to tell any of the other plaintiffs or Wilkinson would file suit against him as well), the undersigned assumed Plaintiffs would exercise their right of cross-examination and request live testimony. Whichever way the Court prefers to handle the matter is fine with the undersigned.

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U.S. Mail delivery on this 27th day of May, 2010, to the following persons:

Frank Herrera
Gustavo Sardina
Quintaros, Prieto, Wood & Boyer, P.A.
9300 South Dadeland Blvd.
Fourth Floor
Miami, FL 33156

Timothy Lucero, Esq.
Lucero Law Group
10693 Wiles Road, Ste. 159
Coral Springs, FL 33076

Frederic B. O'Neal, Esq., individually
and in his official capacity as chairman
and sole officer of the Tea Party,
a registered Florida minor political party
Florida Bar No. 0252611
Frederic B. O'Neal, Esq.
P.O. Box 842
Windermere, FL 34786
(407) 719-6796
Fax (407) 292-5368
Fredonealatlaw@aol.com